IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**SECTION 1188(b) REPORT**

Comes now Jamieson CAPEX Fund, LLC ("CAPEX" or the "Debtor"), by and through undersigned counsel, pursuant to Section 1188(b) of Title 11 of the United States Code, and reports as follows:

### I.  Introduction and Case Overview

Some small businesses find their way into Chapter 11 when sales decline. Others enter Subchapter V nudged by the ebbs and flows of broader industry trends. And a not insignificant number of entities petition for reorganizational relief on the heels of managerial miscalculations, seeking to right size operations and escape the cumbersome grasp of regrettable contractual obligations.

CAPEX does not nearly fit into any of these common molds, instead coming before this Honorable Court as a direct and proximate result of governmental overreach. The North Dakota Securities Department (the "NDSD")—whether by reason of nonfeasance, malfeasance, or otherwise—took ill-informed aim at the Debtor, directing CAPEX to cease and desist various activities based on a factually and legally errant understanding of the Debtor's affairs and operations. The state commandeered monies belonging to CAPEX, holding the funds at bay when the Debtor otherwise needed the cashflow to satisfy obligations on loans secured by valuable real estate. And when the Debtor soon thereafter proved incapable of honoring its debts as they came

1

due, that real estate was foreclosed at fire sale discounts, with NDSD continuing to cling tightly to the funds needed to redeem properties and avoid a catastrophic loss of equity in the real estate assets.

This bankruptcy follows, not to save jobs or afford grounds upon which to renegotiate an unfavorable lease but, rather, with the express design of utilizing those provisions of Title 11 of the United States Code (the "Bankruptcy Code") that provide both for a turnover of monies belonging to a debtor and, too, that contemplate an abrogation of sovereign immunity. 11 U.S.C. §§ 108, 542. CAPEX is bleeding funds—and, with those funds, assets—because of the actions of NDSD. The Bankruptcy Code uniquely furnishes a platform for CAPEX to remedy these wrongs, for the benefit of all creditors, equity holders, and stakeholders.

This case will, too, invite occasion for CAPEX to look beyond NDSD in addressing one very specified economic loss. One of the Debtor's most notable assets was a building in Grand Forks, owned not by any third party fund or investment vehicle but, rather, directly by CAPEX itself. When NDSD froze and confiscated the Debtor's monies, the debt secured by that building could no longer be serviced and a foreclosure ensued. But CAPEX, recognizing the catastrophic nature of a loss of this particular asset, sought to match the asset with a buyer, and secured a contract to sell the building for roughly $1 million more than the total sum due and owing to a correlative lender. The contract was legitimate in every way, negotiated at arm's length, and with a bona fide third party unrelated to the Debtor. But in lieu of permitting that contract to close, and the underlying loan to be retired in full, the lender opted to foreclose.

There exists precedent outside of North Dakota for this precise circumstance to be construed as a tortious act of interference with the contractual and/or property rights of the owner of real estate. There also exists precedent outside of North Dakota where courts have declined to

2

apply such a theory of liability. There does not, however, appear to be any precedent—one way or the other—in North Dakota. And this case will afford occasion for the subject theory to be tested with a fact pattern that could scantly be more alluring.

The precise causes of action to be brought against NDSD, the State of North Dakota, and a private lender are still being ironed out. One or more adversary proceedings will likely be filed before a status conference is held in this case, however, and the claims for relief therein will assuredly furnish greater detail than this report. But it is meritorious of recognition, at the outset, that this is a small business Chapter 11 focused on the liquidation of litigation rights. And this is thusly a case that will be governed to a greater degree by the outcome of adversary proceedings than by any of the more common tools of Chapter 3 of the Bankruptcy Code.

## II.   Plan Efforts

One byproduct of the slightly unorthodox underpinnings of this case is the reality that CAPEX's plan of reorganization is unlikely to be novel or controversial. The Debtor is an investment fund (albeit one with some exposure to EPIC Companies properties and to the general vulnerabilities of the local real estate market). CAPEX will continue to operate as an investment fund, collecting monies where appropriate and using those funds to pay debts, issue dividends, and make appropriate forward-looking investments. The business model is neither broken nor readily susceptible to tinkering; there is no payroll to be carefully reviewed nor are there any consumer-facing activities crying out for price point adjustments.

Barring unforeseen circumstances, a plan will be timely filed in this case. And while no votes have been improperly solicited prematurely, there exists a reasonably cautious optimism that the plan will either prove consensual in nature or, at minimum, generally unobjectionable (saving and excepting any qualms that may be expressed by the aforementioned litigation targets). The

3

plan is likely to be quite simple: the Debtor will continue operating and will use funds recovered through litigation to retire debts in accord with the priority scheme established by the Bankruptcy Code. Depending on the outcome of the litigation, this may well invite a 100% distribution to creditors. But the outcome is highly unlikely to be known at the time the plan is filed, balloted, and brought before this Honorable Court for confirmation, so some degree of speculation will necessarily underlie the projections in this case (just as speculation tends to inform projections in almost every case).

The foregoing notwithstanding, CAPEX is certainly open to the views of stakeholders on what components ought to be integrated into a plan herein. All parties in interest are sincerely invited to share their thoughts and perspectives as the bankruptcy progresses, with hopes a collaborative approach to a plan may, in turn, invite a consensual confirmation.

                Respectfully Submitted,

Dated: November 5, 2024    By: /s/ Maurice B. VerStandig
                Maurice B. VerStandig, Esq.
                The Dakota Bankruptcy Firm
                1630 1st Avenue N
                Suite B PMB 24
                Fargo, North Dakota 58102-4246
                Phone: (701) 394-3215
                mac@dakotabankruptcy.com
                *Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of November, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

                /s/ Maurice B. VerStandig
                Maurice B. VerStandig