# UST EXHIBIT 1

## STATE OF NORTH DAKOTA

## SECURITIES DEPARTMENT

|  |  |
|---|---|
| | ) |
| In the Matter of Jamieson Capital Financial, LLC, | ) |
| a North Dakota limited liability company, and | ) |
| Jeremy L. Carlson, | ) |
| | ) |
| Respondents. | ) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The North Dakota Securities Commissioner has a reasonable basis to believe that

the Respondents have engaged in, are engaging in, or are about to engage in, acts,

practices or transactions, as more fully described below, which are prohibited under

Chapter 10-04 of the North Dakota Century Code (N.D.C.C.). It is necessary and

appropriate in the public interest and for the protection of investors to restrain these acts,

practices, or transactions of the Respondents.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER TO SUMMARILY SUSPEND INVESTMENT ADVISER REGISTRATION, NOTICE OF PROPOSED ORDER TO REVOKE INVESTMENT ADVISER REGISTRATION, CEASE AND DESIST ORDER, NOTICE OF CIVIL PENALTIES, ORDER FOR RESCISSION, NOTICE OF RESERVATION OF COMMISSIONER'S AUTHORITY TO AMEND ORDER, AND NOTICE OF RIGHT TO REQUEST A HEARING**

### FINDINGS OF FACT

The Securities Commissioner has determined as follows:

1.      Respondent, Jamieson Capital Financial, LLC, CRD #175016, (hereinafter,

"Jamieson") is a North Dakota limited liability company headquartered in Fargo, North

Dakota, which has been registered as an investment adviser in North Dakota, as

defined in N.D.C.C. §10-04-02(10) and pursuant to N.D.C.C. §10-04-10(3), since May

12, 2015. Jamieson is not now and has never been registered as an issuer-dealer or

broker-dealer with the North Dakota Securities Department.

2.      Respondent, Jeremy L. Carlson, CRD #4465093, (hereinafter, "Carlson") is a resident of Fargo, North Dakota, who, for all times relevant to this matter, operated and controlled Jamieson, as its President and sole member. According to the Investment Adviser Registration Depository (IARD), Carlson applied for registration as an Investment Adviser Representative of Jamieson on November 16, 2021. Carlson's application is currently in "Deficient" status as he has not passed the required qualifying examination. Carlson currently is not registered as a securities professional in any capacity in North Dakota.

3.      In the course of an examination of Respondents' business practices by the North Dakota Securities Department, it was discovered that Jamieson's Form ADV and Parts 2A and 2B, filed with the Department by the Respondents at the time of the firm's registration application, and which had never been updated as required, did not accurately describe the business conducted by the firm. The Department's investigation has uncovered numerous violations of the Securities Act, N.D.C.C. Chapter 10-04, including violation of custody prohibition, acting as an unregistered broker-dealer, acting as an unregistered agent, breach of fiduciary duty, unlawful conduct of an investment adviser, and fraudulent practices, as further described herein, and which are grounds for the summary suspension of, and revocation of, the investment adviser registration of Respondent, Jamieson Capital Financial. LLC, pursuant to N.D.C.C. §10-04-11(1)&(4).

**Custody violations**

4.      From at least January 1, 2017, to February 28, 2022, Respondents, Jamieson

and Carlson, (together "the Respondents") had custody of investor client funds in violation of N.D.C.C. § 10-04-10.1(6).  From at least as early as January of 2017, the Respondents have directly and indirectly taken possession of and controlled investor client funds, depositing investor client checks and directing wire transfers of investor client funds into bank accounts controlled by the Respondents.  Bank records obtained through subpoenas identified at least 27 business related bank accounts over which the Respondents had or have control.  Investor client funds were deposited into, transferred among, and used as a source of payment from these accounts with Carlson, as principal of Jamieson, exercising unlimited discretion and control of the funds at all times during the relevant period.

5.      For the relevant period, a total of at least $17,780,000 of investor client funds were deposited into bank accounts to which the Respondents had unlimited access, and over which the Respondents exercised unlimited discretion and control. Each deposit and transfer of funds identified in the bank records reviewed by the Department, engaged in by the Respondents, is a separate violation of the custody prohibition under N.D.C.C. § 10-04-10.1(6).  There were at least 153 prohibited custody transactions involving deposits of initial investments into the private fund entities described in Paragraphs 6 through 8.

**Unregistered broker-dealer and unregistered agent violations.**

6.      From at least January 1, 2017, to February 28, 2022, Respondent Jamieson acted as an unregistered broker-dealer and Respondent Carlson acted as an unregistered agent, in violation of N.D.C.C. § 10-04-10, effecting transactions in securities, specifically membership interests in at least seven North Dakota limited

liability companies created by Carlson (the "private funds"), and receiving commissions from the sale of the private fund membership interests, commonly at 3% of the amount of the securities sale and totaling at least $338,366.05.

7.      The private fund entities organized by Carlson included Jamieson CAPEX Real Estate Fund, LLC, also known as Jamieson CAPEX Fund, LLC, Jamieson Legacy Fund, LLC, Jamieson Medical, LLC, Jamieson Natural Resources Fund, LLC, Main Street Investments, LLC, Mainstreet Investment Partners, LLC, Investor Mineral Holdings, LLC, also known as Nova DC, LLC, Secure Income Fund, LLC, and National Sports Capital, LLC.

8.      According to Form D filings made with the Securities and Exchange Commission and the North Dakota Securities Department, each of the private fund entities organized by Carlson, and which offered for sale and sold securities during the relevant time period by and through Respondents Jamieson and Carlson, relied on a federal securities registration exemption Regulation D, Rule 506(b), 17 CFR § 230.506(b), and N.D.C.C. § 10-04-08.4(2).

9.      Regulation D, Rule 506(b) prohibits general solicitation and the Respondents solicited the general public for the offer and sale of these investments in Internet advertising on the Respondents' website and the distribution of private placement memoranda (PPMs).

10.     N.D.C.C. § 10-04-08.4(2)(b) provides: " No security may be offered or sold under this subsection, except through or by a broker-dealer and agent registered in accordance with section 10-04-10, unless it is offered and sold through an officer, director, governor, or partner of the issuer and no commission or other remuneration is

paid, either directly or indirectly."

11.     The offers and sales of the subject investments during the relevant time period as described above, by and through Respondent Jamieson, and for which compensation was paid, at a time when Respondent Jamieson was not registered as an issuer-dealer or broker-dealer with the North Dakota Securities Department, were each a separate violation of N.D.C.C. § 10-04-10(1) by Respondent Jamieson.

12.     The offers and sales of the subject investments during the relevant time period as described above, by and through Respondent Carlson, and for which compensation was paid, at a time when Respondent Carlson was not registered as an agent with the North Dakota Securities Department, were each a separate violation of N.D.C.C. § 10-04-10(2) by Respondent Carlson.

13.     There were at least 64 prohibited unregistered broker-dealer and unregistered agent violations by Respondent Jamieson and Respondent Carlson identified during the relevant time period.

**Breach of fiduciary duty, unlawful conduct of an investment adviser, and fraudulent practices violations - NOVA DC, LLC.**

14.     From at least August 1, 2020 to February 28, 2022, the Respondents solicited investors into the NOVA DC, LLC fund, a private fund entity managed by the Respondents. During the relevant time period at least $4,176,000 was raised from 21 investors.

15.     As stated in the fund Private Placement Memorandum (PPM), the business was the operation of an investment fund, with a focus on investing investor client funds in various digital currency platforms.   The PPM states, "The objective of the Nova DC,

LLC is to provide our members with a premium return on their investment through the Fund's *investment and management agreement with Nova Management, LLC."* (emphasis added).

16.     Additionally, the "Use of Proceeds" from the PPM Summary states: "We intend to use the net proceeds of this offering, estimated to be approximately $19,400,000.00 if all $20,000,000.00 principal amount of Units is sold, for investing in various digital currency platforms."

17.     Respondent Carlson, in addition to being the President and sole member of Respondent Jamieson, is the President of Nova DC, LLC, and the President of Nova Management, LLC.

18.     While solicitation of investor client funds into Nova DC, LLC, began as early as August 1, 2020, the contract for the agreement with Nova Management, LLC referenced in the PPM was not signed until January 1, 2022.  Among other things, this contract indicates: "Company operates an investment fund to invest in digital currency. The specific descriptions of these **strategies are described in detail** in the "Use of Proceeds" section of the Confidential Private Placement Memorandum;" (emphasis added) The "detail" described in paragraph 1.a. of Appendix C – Management Contract of the PPM does not appear to exist, or extends no further than the language described in Paragraph 15 of these Findings of Fact.

19.     From at least August 1, 2020 to February 28, 2022, a total of at least $2,715,644 was moved to cryptocurrency exchanges including Coinbase Global, Inc., FTX Trading LTD, and ByBit Fintech Ltd. from a NOVA DC, LLC Western State Bank checking account and a NOVA DC, LLC First International Bank & Trust checking account by

CARLSON, MICHAEL HELMERS and NICHOLAS HELMERS, and in and out of cryptocurrency wallets controlled by CARLSON, M HELMERS and N HELMERS.

20.     According to his LinkedIn profile, MICHAEL HELMERS, of Mandan, North Dakota, is listed as a "Private Equity Partner/Fund Manager for Nova DC LLC". The timeframe for this role is noted as June 2021 – Present.

21.     According to his LinkedIn profile, NICHOLAS "NICK" HELMERS, of Mandan, North Dakota, is listed as "Private Equity Partner of Nova DC". The timeframe for this position is noted as September 2019 – Present. The profile also describes N HELMERS as "Owner and Fund Manager of Nova DC, a Private Equity group that specializes in Cryptocurrencies".

22.     Neither M HELMERS nor N HELMERS are identified in any capacity in the NOVA DC, LLC PPM.

23.     A search was completed of the CRD/IARD. Neither M HELMERS nor N HELMERS are registered as a registered representative of a broker dealer or an investment adviser representative of an investment adviser firm. Neither possess the necessary registration to act as an investment adviser to a private fund.

24.     From at least May 17, 2021, to February 28, 2022, at least $260,000 of investor client funds were paid to M HELMERS, N HELMERS or NOVA MANAGEMENT, LLC by the Respondents from a NOVA DC, LLC's First International Bank & Trust checking account.

25.     From at least April 19, 2021 to February 28, 2022, at least $490,000 of investor client funds were transferred by the Respondents from a NOVA DC, LLC's First International Bank and Trust checking account to a checking account of a different

private fund controlled by the Respondents, specifically JAMIESON CAPEX FUND, LLC, and used for purposes other than investing in digital assets.

26.     From at least September 27, 2021, to December 30, 2021, at least $870,000 of NOVA DC, LLC's investor client funds were lent by the Respondents to MICHAEL KUNTZ or entities controlled by KUNTZ.  According to the information produced by the North Dakota Secretary of State, KUNTZ, a resident of Grand Forks, North Dakota, is listed as the registered agent for various entities, including Leftfield Development, LLC and National Sports Opportunity Partners, LLC.  Investor client funds were used to make loans to both entities. The Respondents used investor client funds for purposes other than investing in digital assets.

27.     Bank records obtained through subpoena from Western State Bank related to a Nova DC LLC checking account identify the use of investor client funds by the Respondents to make a $15,000 payment to ND Country Fest, LLC.  The payment is dated June 30, 2021, and cleared the checking account July 7, 2021.   The Respondents used investor client funds deposited in this Nova DC, LLC checking account for purposes other than investing in digital assets.  The use of investor client funds by the Respondents to sponsor a music festival is not in the best interest of investors and a breach of fiduciary duty.

28.     Bank records and other financial records provided to the Department by the Respondents identify the use of investor client funds of Nova DC, LLC by the Respondents to pay expenses related to the acquisition of a commercial property located at 2705 Sunset Drive NW, Mandan, North Dakota, including earnest money in the amount of $50,000, origination fees in the amount of $5,965, closing costs in the

amount of $3,757, and real estate taxes in the amount of $11,514.93. The Respondents used investor client funds of Nova DC, LLC for purposes other than investing in digital assets.

29.    From at least March 22, 2021, to February 28, 2022, the Respondents, M HELMERS, and N HELMERS utilized the cryptocurrency trading platform Bybit Fintech Ltd. (Bybit), an entity not authorized to operate in the United States, as clearly disclosed on the Platform website and the Bybit Service Agreement signed by platform users. In order to use this trading platform, the Respondents, M HELMERS, and N HELMERS intentionally circumvented Internet Protocol (IP) address restrictions.

30.    Accessing the Bybit website from a United States IP address results in the following notification appearing on the website home page banner: "Your IP address indicates that you are located in one of Bybit's restricted countries or regions. According to our Terms of Service, Bybit does not provide service to your country or region. For further assistance, please contact our customer support or email us at support@bybit.com."

31.    The Bybit Service Agreement located on the Bybit website includes the following:    "12.3 **You understand and agree** that the information and services provided by the Platform are not provided to, and may not be used by, any individual or institution in any jurisdiction where the provision or use thereof would be contrary to any applicable law, or where we are not authorized to provide such Platform or information and services. We do not offer services or products to Users in a few excluded jurisdictions including **the United States**, mainland China, Singapore, Quebec (Canada), North Korea, Cuba, Iran, Crimea, Sevastopol, Sudan or any other

jurisdictions in which we may determine from time to time to terminate the services at our sole discretion (the "Excluded Jurisdictions"). You should inform us immediately if you become a resident in any of the Excluded Jurisdictions or are aware of any Clients based in any of the Excluded Jurisdictions. **You understand and acknowledge that if it is determined that you have given false representations of your location or place of residence, the Company reserves the right to take any appropriate actions with compliance to the local jurisdiction, including termination of any Account immediately and liquidating any open positions."** (Emphasis added).

32.     Despite having custody and control of all fund assets invested in the Nova DC, LLC fund since its inception, the Respondents have failed to produce to the Department comprehensive written or electronic records of all trading and valuation records as requested repeatedly.    With each request, only a partial, unresponsive records production has been provided.    For example, partial trade blotters from Coinbase Global, Inc., and Bybit Fintech Ltd. for a limited time frame or a snapshot of a balance of a particular cryptocurrency held in a self-hosted wallet have been the extent of information produced.    As such it is unclear what the actual current value of the digital asset holdings of the Nova DC, LLC fund is. The conduct described is a violation of N.D.C.C. §10-04-11(1)(e) and N.D.C.C. §10-04-10.3 and N.D.C.C. §10-04-11(3) .

33.     Respondents have breached a fiduciary duty to the client investors and private fund entities organized by Respondent Carlson and the conduct described constitutes multiple violations of N.D.C.C. §§ 10-04-10.1(1), 10-04-10.1(2) and  10-04-15(3).

**Breach of fiduciary duty, unlawful conduct of an investment adviser, and fraudulent practices violations – JAMIESON MEDICAL, LLC and MAINSTREET INVESTMENT PARTNERS, LLC.**

34.    From at least May 18, 2020, to February 28, 2022, the Respondents solicited investors to invest in JAMIESON MEDICAL, LLC, a private fund managed by the Respondents. During the relevant timeframe, a total of $1,433,500 was invested by 8 investors. As stated in the fund PPM "Use of Proceeds" disclosure, investor client funds would be used "for investing in, and non-bank lending activities to a licensed marijuana grow facility, distribution operations and retail outlets located throughout the State of North Dakota".

35.    From at least May 18, 2020, to February 28, 2022, the Respondents solicited investors to invest in MAINSTREET INVESTMENT PARTNERS, LLC, a private fund managed by the Respondents. During the relevant timeframe, a total of $2,811,400 was invested by 23 investors. No Private Placement Memorandum was provided to the Department per our information request.  It is unclear if a PPM was created for MAINSTREET INVESTMENT PARTNERS, LLC and provided to investors. Marketing material for the fund indicates the fund created an equity investment series with its Angel Fund to invest into Pure Dakota, LLC.

36.    From at least June 22, 2020, to May 18, 2021, the Respondents used investor client funds to make a series of payments totaling $3,905,000 to DAVID MEYER of Flasher, North Dakota, the holder of a majority of the common membership units of Pure Dakota Holdings, LLC, formed in 2021, to hold 100% of the membership units of the following subsidiaries, Pure Dakota, LLC, (medical marijuana grow licensee) and

Pure Dakota Health, LLC, Pure Dakota Health of Williston, LLC, and Pure Dakota Health of Bismarck, LLC (medical marijuana dispensary licensees). These payments were represented by the Respondents to investors to be for the purpose of purchasing membership interests in Pure Dakota, LLC, in 2020 and 2021 and as qualified investments for Angel Investor Tax Credits in those years, **or** in Pure Dakota Holdings, LLC, the parent company, in 2021. These payments were made by Respondent Carlson in his sole discretion, despite his knowledge and understanding that a purchase agreement had not been executed and that an ownership change of MEYER'S membership units in any Pure Dakota entity had not been documented or approved by the Department of Health, Division of Medical Marijuana as required by N.D.C.C. § 19-24.1-17(2).

37.    The first notification/request provided to the Department of Health, Medical Marijuana Division related to a change in ownership of Pure Dakota Holdings, LLC occurred by email dated May 5, 2021, almost one year after the first payment was made to MEYER by the Respondents from investor client funds.

38.    In soliciting investors, the Respondents failed to disclose to potential investors the material fact that an investment in a North Dakota licensed medical marijuana entity would need to be approved under N.D.C.C. § 19-24.1-17(2), and that any transactions under negotiation with DAVID MEYER and the two private fund entities had not, and may not be approved.

39.    Despite knowledge that no purchase agreement had been executed and no approval for a change of ownership in Pure Dakota, LLC or any other Pure Dakota entity had been granted, Respondent Carlson facilitated the production of tax

documents related to angel tax credits available to investors in the MAINSTREET

INVESTMENT PARTNERS, LLC fund and filed them with the North Dakota State Tax

Commissioner in January 2021 for the 2020 tax year and January 2022 for the 2021

tax year.

40.    The Respondents have breached a fiduciary duty to the client investors and the

two private fund entities organized by Respondent Carlson by making a series of

payments totaling $3,905,000 over the course of 12 months to DAVID MEYER when

no purchase agreement for the acquisition of membership interests in Pure Dakota LLC

or Pure Dakota Holdings LLC had been executed, and no change of ownership had

been approved as required under N.D.C.C. § 19-24.1-17(2), and the conduct described

constitutes multiple violations of N.D.C.C. §§ 10-04-10.1(1), 10-04-10.1(2) and 10-04-

15(3).

## CONCLUSIONS OF LAW

41.    The North Dakota Securities Department has jurisdiction over the subject

matter of these proceedings and the Respondents, Jeremy L. Carlson and

Jamieson Capital Financial, LLC.

42.    Pursuant to N.D.C.C. §10-04-11(1)&(4), the Securities Commissioner may

summarily suspend and revoke the registration of, and place limitations on the activities

of, an investment adviser or any person directly or indirectly controlling the investment

adviser, if the Commissioner finds that the investment adviser has violated the

provisions of the Securities Act, N.D.C.C. Chapter 10-04, or any order or rule issued

pursuant thereto; has engaged in dishonest, fraudulent or unethical practices in the

securities business; has failed to file with the Department any financial record required

pursuant to N.D.C.C. §10-04-10.3, or has refused to permit or has otherwise impeded an examination into the person's affairs; or has failed to properly supervise its employees or representatives. The activities set forth above in the FINDINGS OF FACT constitute sufficient grounds for the Commissioner to summarily suspend and revoke the investment adviser registration of Respondent, Jamieson Capital Financial, LLC, and place limitations on the activities of Respondents, Jeremy L. Carlson and Jamieson Capital Financial, LLC, as set forth herein.

43.    The transactions referenced and conduct of Respondents found in the preceding FINDINGS OF FACT, including the violations of the Securities Act, N.D.C.C. Chapter 10-04 provisions concerning custody prohibition, acting as an unregistered broker-dealer, acting as an unregistered agent, breach of fiduciary duty, unlawful conduct of an investment adviser, and fraudulent practices, are incorporated into these CONCLUSIONS OF LAW by reference and are grounds for the statutory violations cited.

44.    Pursuant to N.D.C.C. § 10-04-16(1), the Securities Commissioner has the authority to Order that a person Cease and Desist from violations of the Securities Act, to rescind transactions made in violations of the Securities Act, and to assess civil penalties in an amount not to exceed $10,000 for each violation of the Securities Act. Based on the prohibited custody and prohibited unregistered broker-dealer and unregistered agent violations described above alone, civil penalties could total at least $2,170,000.    The violations described above are sufficient grounds for the Commissioner to assess civil penalties against the Respondents pursuant to N.D.C.C. § 10-04-16(1).

45.   This Order is necessary and appropriate in the public interest for the protection of investors.

## ORDER TO SUMMARILY SUSPEND THE INVESTMENT ADVISER REGISTRATION OF JAMIESON CAPITAL FINANCIAL, LLC

Based on the Findings of Fact set forth above and pursuant to N.D.C.C. § 10-04-11(4), the Securities Commissioner hereby Orders that the investment adviser registration of Jamieson Capital Financial, LLC is hereby suspended pending final determination of the matter regarding the Commissioner's proposed Order to revoke the investment adviser registration of Jamieson Capital Financial, LLC, after hearing or opportunity for hearing.

## NOTICE OF PROPOSED ORDER TO REVOKE THE INVESTMENT ADVISER REGISTRATION OF JAMIESON CAPITAL FINANCIAL, LLC

YOU ARE HEREBY NOTIFIED THAT the North Dakota Securities Commissioner hereby proposes to issue an Order to Revoke the investment adviser registration of Jamieson Capital Financial, LLC, based on the Findings of Fact set forth above, pending hearing or an opportunity for hearing.

## CEASE AND DESIST ORDER

IT IS ORDERED, pursuant to N.D.C.C. § 10-04-16 and N.D.C.C. § 10-04-11(1), that the Respondents shall immediately CEASE AND DESIST from any further violations of the Securities Act, N.D.C.C. Chapter 10-04, including:

1.     From exercising custody and control of client funds and securities,

including payment of fees to Respondents or entities controlled by Respondents, or unregistered agents, representatives or employees of Respondents.

2.     From utilizing a digital asset exchange that is not authorized to provide services to users located in the United States, and from exercising custody over client funds by holding digital assets in a self-hosted wallet controlled directly or indirectly by Respondents.

3.     From offering for sale or selling securities, or effecting transactions in securities, for compensation, direct or indirect, in or from North Dakota unless and until they have registered with the Securities Department as issuer-dealers, broker-dealers or agents or are exempt from registration under N.D.C.C. Chapter 10-04.

4.     From employing any device, scheme, or artifice to defraud any person; or engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

### NOTICE OF CIVIL PENALTIES

**YOU ARE NOTIFIED** that the above-cited violations are sufficient grounds for the imposition of civil penalties pursuant to N.D.C.C. § 10-04-16(1).   The Securities Commissioner does not herein assess a civil penalty, but the Commissioner expressly reserves the authority to assess civil penalties, not to exceed $10,000 per violation, regarding the violations outlined above, any other violations subsequently discovered, or any future securities violations or violations of this order.   The Commissioner reserves the authority to direct any penalties to the North Dakota Investor Restitution Fund, for the purpose of repaying aggrieved investors, as appropriate.

## ORDER FOR RESCISSION

IT IS ORDERED, pursuant to N.D.C.C. § 10-04-16, that the Respondents shall return

to identifiable investors all investor client funds currently on deposit with the following

financial institutions in violation of prohibited custody.

1. Aspire Bank
   a. Jamieson Capital Financial LLC
2. Bell Bank
   a. Jamieson Capital Financial LLC
3. Capital Credit Union
   a. Mainstreet Investment Partners LLC
   b. Jamieson CAPEX Fund LLC
4. First International Bank & Trust
   a. Jamieson CAPEX Fund LLC
   b. Mainstreet Investment Partners LLC
   c. Nova DC LLC
   d. Nova Management LLC
   e. Jamieson Capital Financial LLC
5. First Western Bank
   a. Jamieson CAPEX Real Estate Fund LLC
6. Western State Bank
   a. JAMCO LLC
   b. Jamieson CAPEX Fund LLC
   c. Secure Income Fund LLC
   d. Jamieson Natural Resources Fund LLC
   e. Nova DC LLC
   f. Jamieson Legacy Fund LLC

## NOTICE OF RESERVATION OF COMMISSIONER'S AUTHORITY TO AMEND ORDER

**YOU ARE HEREBY NOTIFIED** that the above-cited violations are sufficient grounds

for the relief imposed in this Order. The Department's investigation of the Respondents

continues and the Commissioner expressly reserves the authority to Order additional relief

under N.D.C.C. Chapter 10-04, regarding the violations outlined above, any other violations

subsequently discovered, or any future securities violations or violations of this order, in the

public interest and for the protection of investors.

## NOTICE OF RIGHT TO REQUEST A HEARING

**YOU ARE NOTIFIED** that pursuant to N.D.C.C. § 10-04-12 you may request a

hearing before the Securities Commissioner if such a request is made in writing WITHIN

FIFTEEN (15) DAYS AFTER THE RECEIPT OF THIS ORDER. The Respondents have the

right to be represented by legal counsel at the hearing.

**IN TESTIMONY WHEREOF**, witness my hand and seal this 15 day of July, 2022.

Karen J. Tyler, Securities Commissioner
North Dakota Securities Department
600 East Boulevard Ave.
State Capitol – Fifth Floor
Bismarck, ND  58505-0510
(701) 328-2910