# UST EXHIBIT 5

**STATE OF NORTH DAKOTA**

**SECURITIES DEPARTMENT**

|  |  |
|---|---|
| In the Matter of National Sports Opportunity Partners LLC, a/k/a the trade name, National Sports Opportunity, LLC, Michael R. Kuntz, Jamieson Capital Financial, LLC, and Jeremy L. Carlson | ) ) ) ) ) ) ) |
| Respondents. | ) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**THE SECURITIES COMMISSIONER OF THE STATE OF NORTH DAKOTA TO:**

**NATIONAL SPORTS OPPORTUNITY PARTNERS, LLC, JAMIESON CAPITAL**

**FINANCIAL, LLC, North Dakota limited liability companies, MICHAEL R. KUNTZ and**

**JEREMY L. CARLSON, RESPONDENTS.**

The North Dakota Securities Commissioner has a reasonable basis to believe that the Respondents have engaged in, are engaging in, or are about to engage in, acts, practices or transactions, as more fully described below, which are prohibited under Chapter 10-04 of the North Dakota Century Code (N.D.C.C.). It is necessary and appropriate in the public interest and for the protection of investors to restrain these acts, practices, or transactions of the Respondents.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, CEASE AND DESIST ORDER, NOTICE OF AND ORDER FOR RESCISSION, NOTICE OF AND ORDER FOR CIVIL PENALTIES, NOTICE OF RESERVATION OF COMMISSIONER'S AUTHORITY TO AMEND ORDER, AND NOTICE OF RIGHT TO REQUEST A HEARING**

**FINDINGS OF FACT**

1.      Respondent, Michael R. Kuntz (hereinafter "Kuntz"), is currently a resident of Grand Forks, North Dakota, who, for all times relevant to this matter, operated and

controlled the entities National Sports Opportunity Partners, LLC and ICON Investment Group, LLC.

2.      Respondent, Jeremy L. Carlson (hereinafter "Carlson"), is a resident of Fargo, North Dakota, who, for all times relevant to this matter, operated and controlled Jamieson Capital Financial, LLC, as its President and sole member. Carlson also represented himself as Treasurer for National Sports Opportunity Partners, LLC.

3.      Respondent, Jamieson Capital Financial, LLC (hereinafter "JCF"), is a North Dakota limited liability company operated and controlled by Carlson, with its principal address listed as 2865 Lilac Lane, Fargo, North Dakota.  According to the secretary of state website, the registered agent is listed as Carlson.

4.      Respondent, National Sports Opportunity Partners, LLC (hereinafter "NSOP"), is a North Dakota limited liability company operated and controlled by Kuntz, with its principal address listed as 275 Elks Drive, Grand Forks, North Dakota. According to the secretary of state website, the registered agent is listed as Northwest Registered Agent Service, Inc. located in Fargo, North Dakota.

5.      ICON Investment Group, LLC (hereinafter "ICON") is a North Dakota limited liability company operated and controlled by Kuntz, with its principal address listed as 275 Elks Drive, Grand Forks, North Dakota. According to the secretary of state website, the registered agent is listed as Northwest Registered Agent Service, Inc., located in Fargo, North Dakota.

6.      On July 18, 2022, the North Dakota Securities Department (hereinafter "Department") served a Findings of Fact, Conclusions of Law, Order to Summarily Suspend Investment Adviser Registration, Notice of Proposed Order to Revoke

Investment Adviser Registration, Cease and Desist Order, Notice of Civil Penalties, Order for Rescission, Notice of Reservation of Commissioner's Authority to Amend Order, and Notice of Right to Request a Hearing on JCF and Carlson. Also on July 18, 2022, the Department served an Order Summarily Suspending the Offer and Sale of Federal Covered Securities, Cease and Desist Order, Notice of Civil Penalties, and Notice of Right to Request a Hearing on Carlson and the private pooled investment funds (private funds) he organized. Carlson was identified in documents related to the private funds in a number of capacities including president, treasurer, member, manager, and executive officer. Lastly, on December 22, 2022, the Department served a Findings of Fact, Conclusions of Law, Cease and Desist Order, Notice of and Order for Civil Penalties, Notice of Reservation of Commissioner's Authority to Amend Order and Notice of Right to Request a Hearing on JCF and Carlson. See Carlson Orders[1].

7.      On July 29, 2022, Kuntz and three entities which he operates and controls, were served a Cease and Desist Order, Notice of Civil Penalties, Order for Rescission, and Notice of Right to Request a hearing by the Department. See Kuntz Order[2]. The order alleges that Respondents Kuntz and NSOP illegally engaged in the offer for sale and/or the sale of unregistered promissory notes or other evidence of indebtedness in the

---

[1] July JCF and Carlson Order:
https://www.securities.nd.gov/sites/www/files/documents/enforcement/Jamieson%20Capital%20Financial%20and%20Jeremy%20L%20Carlson%20Findings%20of%20Fact%20Cease%20and%20Desist.pdf;
July Carlson and Private Funds Order:
https://www.securities.nd.gov/sites/www/files/documents/enforcement/Jamieson%20CAPEX%20Fund%20Stop%20Order%20Cease%20and%20Desist%20Notice%20of%20Civil%20Penalties.pdf; and
December JCF and Carlson Order
https://www.securities.nd.gov/sites/www/files/documents/enforcement/ORD%20Jamieson%20Capital%20Financial%20LLC%20and%20Jeremy%20L.%20Carlson.pdf
[2] Kuntz July Order
https://www.securities.nd.gov/sites/www/files/documents/enforcement/Michael%20Kuntz%20National%20Sports%20Opportunity%20Partners%20Cease%20and%20Desist.pdf

amount of at least $1,955,000.00 to private fund entities controlled by Respondent Carlson.

8.      From on or about October 4, 2021 to July 22, 2022 a total of at least $25,430,946.51 was paid by wire, bank transfer, personal check and/or cashier's check from various individuals and entities to entities and accounts controlled by Kuntz and/or Carlson in exchange for unregistered debt securities. The investor money that was raised by Respondents was represented by Respondents to be used for working capital for NSOP and to purchase an equity interest in Legacy Sports USA, LLC.

9.      An additional $8,500,000.00 was solicited by Respondents to secure alleged alternative financing in the amount of $50,000,000.00, which is described below in Note #10.

**Sale of unregistered securities in violation of N.D.C.C. § 10-04-04; unregistered broker-dealer or agent violations of N.D.C.C. § 10-04-10 and misappropriation of investor money and fraudulent representations in violation of N.D.C.C. § 10-04-15.**

10.     Respondents willfully failed to disclose material facts when offering the investments to prospective investors, including the following:

    (a) Information about the assets and liabilities of NSOP, its thin capitalization and lack of any earnings history that would support repayment of tens of millions of dollars of short-term debt instruments, and any other information describing the means by which Respondents could provide investors with the promised returns and liquidity, and therefore, the risks of loss of their investments;

    (b) Information about the use of investor money, including that, rather than being used as "working capital" for NSOP, millions of dollars of investor money was transferred to at least two unlicensed out-of-state money brokers and their

affiliates for "fees" to secure multi-million dollar alternative financing commitments, in an apparent "fee for funding" fraud, and to make interest payments to early investors from new investor money in a Ponzi like fashion; and

(c) That the investments offered by Respondents were neither registered nor exempt from registration.

These failures to disclose were material omissions of fact, necessary to make the statements made in connection with the offerings, not misleading. The failure to disclose material information in connection with the offer to sell any security in or from this state constitutes a fraudulent practice in violation of N.D.C.C. § 10-04-15(2) and each of the Respondents NSOP, Kuntz, JCF and Carlson engaged in sixteen violations of N.D.C.C. § 10-04-15(2), totaling sixty-four violations.

11.    The security agreement in Note #1 below represented to investor MEH that it was a first priority security interest in the property pledged as collateral for return on the investment and that the pledged assets would be kept free of any future liens or encumbrances. All security agreements executed thereafter, pledging the same assets as collateral to later investors for their debt securities purchased, falsely represented the lien priority and the risk of nonpayment and constituted a fraudulent practice in violation of N.D.C.C. § 10-04-15(2). Respondent Kuntz and NSOP each engaged in seven violations of N.D.C.C. § 10-04-15(2), totaling fourteen violations. Carlson also engaged in two violations of N.D.C.C. § 10-04-15(2) where he signed the security agreements as treasurer of NSOP.

12.     From October 4, 2021, when the promissory notes were sold, up until the date of this order, NSOP and Kuntz have taken possession and control of investor money and misappropriated investor money by using it to pay fees related to alternative financing commitments from unlicensed money brokers and to make interest payments to earlier investors in a Ponzi-like manner. Respondents NSOP and Kuntz each engaged in at least forty-three violations of N.D.C.C. § 10-04-15. Respondents Carlson and JCF have also taken possession and control of investor money and misappropriated investor money by using it for personal expenses, both Carlson and JCF engaged in at least thirty-one violations of N.D.C.C. § 10-04-15. Each of these transactions is detailed below in paragraphs 17 through 80.

13.     On November 10, 2021, JCF invoiced NSOP for Carlson's participation in the sale of the four promissory notes described below in paragraphs 17 through 30, a transaction-based fee of 0.5% of the $12,500,000.00 investment, for a total of $62,500.00. The fee is reflected in Check #1586 payable to JCF from NSOP Choice Bank account in the amount of $62,500.00. In doing so, NSOP and Kuntz utilized, and JCF and Carlson acted, as an unregistered "broker-dealer" and "agent" of the issuer, NSOP, as defined in N.D.C.C. §§ 10-04-02(1) and 10-04-02(3), all in violation of N.D.C.C. § 10-04-10.

14.     When providing records and information to the Department describing the involvement of Carlson and JCF with NSOP, Carlson through counsel, represented that Carlson did not hold any records for any transactions related to NSOP other than those for which his private fund entities were the maker of the promissory note and that he did not receive any compensation, directly, or indirectly in connection with these transactions. As described, Carlson invoiced NSOP for his participation in the sale of certain

promissory notes and records obtained by the Department through its investigation show fraudulent representations made by Carlson. By providing documents to the Department that have been altered and which misrepresent the signing parties and by failing to correct the records maintained, and by providing misrepresentations or misstatements to the Department regarding compensation, Carlson engaged in at least two violations of both N.D.C.C. § 10-04-10.3(1)(c) and N.D.C.C. § 10-04-15(1).

15.     Respondent NSOP engaged in four violations by utilizing Respondent JCF and Carlson as an unregistered broker dealer or agent. The number of securities violations by Carlson, acting as an agent for NSOP in violation of N.D.C.C. § 10-04-10(2), total at least sixteen. The number of securities violations by JCF, as an unregistered broker-dealer under N.D.C.C. § 10-04-10(1) total at least four. The four Respondents are jointly and severally liable to the four investors for rescission pursuant to the provisions of N.D.C.C. § 10-04-17.

16.     Respondents Kuntz and NSOP offered and sold "securities" as defined in N.D.C.C. § 10-04-02(19). The securities were neither registered nor exempt from registration, in violation of N.D.C.C. § 10-04-04. Respondent Kuntz and NSOP each engaged in sixteen violations of N.D.C.C. § 10-04-04, totaling thirty-two violations. Each transaction is detailed below.

Note #1: NSOP and MEH

17.     On October 4, 2021, $3,125,000.00 was invested by MEH, a North Dakota entity, via First International Bank and Trust cashier's check #906572 to NSOP. The cashier's check was deposited in the NSOP checking account at Choice Bank on October 4, 2021.

7

18.    In correspondence with the Department, counsel for Kuntz identified this transaction as Disclosure #9. A copy of promissory note number NSOP-001-2021 dated October 4, 2021, was provided by Kuntz' counsel. The promissory note was signed and issued by Kuntz as the president of NSOP. The maturity date of the note was December 31, 2021. Other documents received from Kuntz' counsel related to this transaction include an amortization schedule, security agreement and continuing guaranty.

19.    The security agreement and continuing guaranty documents are both signed by Kuntz as president of NSOP.

Note #2: NSOP and REP

20.    On October 4, 2021, $3,125,000.00 was invested by REP, a North Dakota entity, via First International Bank and Trust cashier's check #906574 to NSOP. The cashier's check was deposited in the NSOP checking account at Choice Bank on October 4, 2021.

21.    In correspondence with the Department dated September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #11. Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-002-2021 which was issued by NSOP.

22.    The promissory note was signed by Kuntz as president of NSOP. The maturity date of the note is December 31, 2021. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records include an amortization schedule.

<u>Note #3: NSOP and DN</u>

23.    On October 4, 2021, $3,125,000.00 was invested by DN, a resident of North Dakota, via First International Bank and Trust cashier's check #906573 to NSOP. The cashier's check was deposited in the NSOP checking account at Choice Bank on October 4, 2021.

24.    In correspondence with the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #10. Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-003-2021 which was issued by NSOP.

25.    The promissory note dated October 4, 2021, was signed by Kuntz as president of NSOP. The maturity date of the note is December 31, 2021. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records include an amortization schedule.

<u>Note #4: NSOP and BL</u>

26.    On October 4, 2021, $3,125,000.00 was invested by BL, a resident of North Dakota, via First International Bank and Trust cashier's check #906575 to NSOP. The cashier's check was deposited in the NSOP checking account at Choice Bank on October 4, 2021.

27.    In correspondence with the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #12. Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25,

2022, included a copy of promissory note number NSOP-004-2021 which was issued by NSOP.

28.    The fully executed promissory note dated October 4, 2021, was signed by Kuntz as president of NSOP. The maturity date of the note is December 31, 2021. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records include an amortization schedule.

29.    The invested money from Note #1 through #4 totaling $12,500,000 was used in part to fund the following transactions:  Outgoing wire transfer to Randy Miller in the amount of $3,500,000.00; Check #1566 written payable to J. Michael Baggett in the amount of $3,500,000.00; Check #1578 to ICON in the amount of $1,202,221.00; Check #1576 to Leftfield Development LLC for $250,000.00; Check #1577 payable to Mike Kuntz in the amount of $250,250.00; Check #1581 to Randy Miller in the amount of $1,000,000.00; Check #1568 to Chad Miller in the amount of $3,500,000.00 and Check #1579 to J. Michael Baggett in the amount of $1,000,000.00.

30.    Randy Miller, a resident of Arizona, is the founder, chairman and managing member of Legacy Sports USA, LLC[3].  Chad Miller, a resident of Arizona, is the chief executive officer of Legacy Sports USA, LLC.  J. Michael Baggett, a resident of Pennsylvania, is noted as general counsel/managing partner of Legacy Sports USA, LLC.

---

[3] Until recently terminated, Legacy Sports USA, LLC ran the Legacy Park: Arizona's Premiere Sports & Entertainment Complex, formerly Bell Bank Park complex in Mesa, Arizona, which is owned by Legacy Cares, Inc. On January 1, 2023, Legacy Cares missed a $10,000,000.00 loan payment and is alleged to still owe contractors who constructed the park over $30,000,000.00 in back payments.  Randy Miller has filed for bankruptcy in Arizona several times.

Note #5: NSOP and MEH

31.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-001-2022, which listed NSOP as the issuer. The $4,000,000.00 promissory note document found in the subpoena response file was dated January 1, 2022. The document was signed by Kuntz as president of NSOP. The maturity date of the note is listed as April 30, 2022. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records included a continuing guaranty, amortization schedule and security agreement.

32.     Neither Kuntz nor his counsel identified promissory note number NSOP-001-2022 in correspondence to the Department dated September 12, 2022. Through the Department's investigative efforts and upon information and belief, this note is the renewal of a promissory note, Note #1 above or note number NSOP-001-2021, previously issued.

Note #6: NSOP and REP

33.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-002-2022 which listed NSOP as the issuer. The $4,000,000.00 promissory note document in the subpoena response file was dated January 1, 2022. The document was signed by Kuntz as president of NSOP. The maturity date of the note is listed as April 30, 2022. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records included a continuing guaranty, amortization schedule and security agreement.

34.     Neither Kuntz nor his counsel identified promissory note number NSOP-002-2022 in correspondence to the Department dated September 12, 2022. Through the Department's investigative efforts and upon information and belief, this note is the renewal of a promissory note, Note #2 above or note NSOP-002-2021, previously issued.

Note #7: NSOP and DN

35.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-003-2022 which listed NSOP as the issuer. The $4,000,000.00 promissory note document found in the subpoena response file was dated January 1, 2022. The document was signed by Kuntz as president of NSOP. The maturity date of the note is listed as April 30, 2022. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records included a continuing guaranty, amortization schedule and security agreement.

36.     Neither Kuntz nor his counsel identified promissory note number NSOP-003-2022 in correspondence to the Department dated September 12, 2022. Through the Department's investigative efforts and upon information and belief, this note is the renewal of a promissory note, Note #3 above or note NSOP-003-2021, previously issued.

Note #8: NSOP and BL

37.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-004-2022 which listed NSOP as the issuer. The $4,000,000.00 promissory note document found in the subpoena response file was dated January 1, 2022. The document was signed by Kuntz as president of NSOP. The maturity date of the note is

listed as April 30, 2022. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records included a continuing guaranty, amortization schedule and security agreement.

38.     Neither Kuntz nor his counsel identified promissory note number NSOP-004-2022 in correspondence to the Department dated September 12, 2022. Through the Department's investigative efforts and upon information and belief, this note is the renewal of a promissory note, Note #4 above or note NSOP-004-2021, previously issued.

Note #9: NSOP and BC

39.     On March 11, 2022, $3,125,000.00 was wired to a NSOP Choice Bank account from BC, a resident of North Dakota. In correspondence with the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #14. Details regarding the promissory note include an amount of $3,125,000.00 with a date of investment as March 11, 2022.

40.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-005-2022 which was issued by NSOP. The promissory note document found in the subpoena response file was undated. The document, signed by Kuntz as president, included an additional line for a signature of Carlson as treasurer of NSOP. The maturity date of the note is listed as August 31, 2022. Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records included a security agreement and continuing guaranty. The continuing guaranty document was signed by Kuntz, as guarantor, and included an additional line for signature of Carlson to sign as guarantor. The security agreement was signed by Kuntz, as

president of NSOP, and included an additional line for a signature of Carlson as treasurer of NSOP.

41.    The money invested by BC was used in large part for the following transactions: $1,100,000.00 outgoing wire transfer on March 11, 2022, to GPT, a North Dakota entity, providing full repayment of principal and a rate of return of over 50% on the $1,000,000.00 GPT Inc., invested with NSOP on December 31, 2021; Check #1630 payable to First State Bank in the amount of $1,025,480.00; Check #1631 to Icon HD, LLC for $568,910.45, a North Dakota entity that designs and constructs AV systems; Check #1629 to VBS Holdings Corp, a Las Vegas entity that designs and installs pre-engineered portable building systems; and an outgoing wire transfer in the amount of $250,000.00 to DRF Services, LLC.

42.    Upon information and belief, DRF Services, LLC, is an unlicensed money broker that orchestrates fraudulent upfront fee for funding scams and is controlled by Lauren Degeer, and involves her associated entities out of Las Vegas, Nevada. Documents received during the ongoing investigation of the Department have revealed that the entities Mallwood Park and Bossington Groove, share the same physical address of 777 N. Rainbow Blvd., Ste. 120 in Las Vegas, Nevada, as Lauren Degeer, LLC.  Lauren Degeer, LLC and the associated entities of DRF Services, LLC, Mallwood Park and Bossington Groove have failed to provide the promised alternative financing of $50,000,000.00 and have not returned the "refundable" upfront fees Kuntz and Carlson paid with investor money in the amount of $7,550,000.00.

Note #10: NSOP and JW

43.      On September 12, 2022, in correspondence to the Department, counsel for Kuntz did not identify a promissory note between NSOP and JW, a resident of North Dakota, as a disclosed item.

44.      Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, included a copy of promissory note number NSOP-006-2022 which was issued to JW by NSOP. The undated promissory note, in the sum of $8,500,000.00, was signed by Kuntz as president and Carlson as treasurer of NSOP. The maturity date of the note is listed as September 30, 2022. The .pdf file name indicated the document was executed on or about March 12, 2022.

45.      Other documents relating to this transaction identified in the ICON Architectural Group, LLC subpoena records include a security agreement, continuing guaranty, and pledge agreement. The continuing guaranty document was signed by both Kuntz and Carlson as guarantors. Records secured through the investigation revealed a summary and documentation regarding the promissory note. The documents noted that JW did not provide money directly to NSOP, however, that JW purchased a bond to secure financing for NSOP. JW gave good and valuable consideration in exchange for the promissory note, and related guaranty, pledge and security agreements in purchasing a $8,500,000.00 bond, brokered by a United Kingdom intermediary and issued by a Cayman Island entity, which appeared to be a condition for approval for the proposed $50,000,000.00 in alternative financing from Capital Avenue Corp.

46.      Capital Avenue Corp. is a Minnesota corporation, having a principal place of business in Minnetonka, Minnesota. According to the company website, the Capital

15

Avenue Corp. team "specializes in advising private and public companies in finance, debt & equity solutions" and "fight[s] to close on the deal that best fits our clients needs & wants." Based upon documentation related to the bond transaction, Jeffrey Robinson, a resident of Minnesota, is the CEO of Capital Avenue Corp. and was involved in facilitating the bond purchased by JW. Capital Avenue Corp. is not registered or licensed in Minnesota or North Dakota in any capacity. According to the Central Registration Depository ("CRD") Jeffrey Robinson, CRD #1942800, is a registered representative of Intercarolina Financial Services, Inc., a broker-dealer headquartered in Greensboro, North Carolina, and Robinson is currently registered as a securities agent in Minnesota. Jeffery Robinson is not registered in North Dakota in any capacity. Based upon information and belief, JW has not been repaid the proceeds of the matured bond and the promised alternative financing, for which the bond was pledged, has not been provided. Numerous closing dates for the alternative financing commitment have been represented to investors and the Department, but as each closing date approaches, a manufactured reason for delay has been communicated.

Note #11: NSOP and Chad Miller

47.    On May 26, 2022, a $3,250,000.00 withdrawal was made by Chad Miller, a resident of Arizona and CEO of Legacy Sports USA, LLC, from his Bell Bank savings account. The proceeds from the savings withdrawal were then deposited into the JCF Bell Bank account. The initial source of the Bell Bank savings account deposit was investor money as identified in paragraph 29.

48.    In correspondence to the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #16 and #18. Details regarding Disclosure #16

16

include an amount of $3,000,000.00 with a date of investment as May 18, 2022. Details regarding Disclosure #18 include an amount of $250,000.00 with a date of investment as May 18, 2022.

49.    Documents provided by counsel for Kuntz regarding this transaction include a signed Loan Agreement with Chad Miller, and an unsecured promissory note signed by Kuntz as sole member and manager. Both documents were dated May 26, 2022, and the maturity date was listed as November 15, 2022.

50.    The money invested by Chad Miller was used for the following transactions: outgoing wire transfer from JCF Bell Bank account in the amount of $2,500,000.00 to Zhongce Rubber Group Co. Ltd, a Chinese tire manufacturer and a $750,000.00 outgoing wire transfer from JCF Bell Bank account to Mallwood Park. The $2,500,000.00 outgoing wire transfer to Zhongce Rubber Group Co. Ltd., sent on May 26, 2022, was returned on June 10, 2022. The same day that the wire to Zhongce Rubber Group Co. Ltd. was returned, $2,500,000.00 was sent via outgoing wire from JCF Bell Bank to Wenzhou Kingpak International Co. Ltd., a Chinese industrial machine manufacturer and this wire was returned on June 16, 2022. Both wire transfers were returned from Industrial and Commercial Bank of China, located in Beijing, China. Carlson at no time has provided to the Department any explanation as to why a state registered investment adviser firm was involved in facilitating these transactions.

51.    After the money invested by Chad Miller was returned from the Chinese entities to the JCF Bell Bank account, the following transactions were made: on June 16, 2022, an outgoing wire transfer to Mallwood Park in the amount of $750,000.00; on June 21, 2022, an outgoing wire transfer to Mallwood Park in the amount of $750,000.00; also on June

21, 2022, a withdrawal by cashier's check from the JCF Bell Bank account payable to NSOP in the amount of $250,000.00, which was then deposited into the NSOP Choice Bank account before being sent via outgoing wire transfer to Mallwood Park that same day; and on June 22, 2022, an outgoing wire transfer to Mallwood Park in the amount of $750,000.00.

52.   Mallwood Park is not a registered business, however, through the investigation of the Department and upon information and belief, Mallwood Park is an unlicensed money broker associated with Lauren Degeer in an upfront fee for funding scam as an alter ego of DRF Services, LLC, all related to Bossington Groove and Lauren Degeer d/b/a/ Lauren Degeer, LLC of N. 777 Rainbow Blvd., Ste. 120 Las Vegas, Nevada.

Note #12: NSOP and JS

53.   On July 1, 2022, $1,000,000.00 was wired to the NSOP Choice Bank account from JS.

54.   In correspondence with the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #19. Details regarding the promissory note provided by Kuntz include an amount of $1,000,000.00 with a date of investment as July 1, 2022. It was also noted, "NSOP does not have possession of this document at this time and continues to attempt to locate it. It is believed that Jamieson Capital may have possession of this document."

55.   Electronic correspondence from counsel for JS dated December 6, 2022, included a fully executed copy of promissory note number NSOP-007-2022. The undated promissory note was signed by Kuntz as president of NSOP and Carlson as treasurer of NSOP. The maturity date of the note is listed as 14 days starting at transfer of funds.

Other documentation received from counsel for JS related to this transaction included a continuing guaranty and single authorization outgoing wire transfer form. The continuing guaranty document was signed by Carlson and Kuntz, both as guarantors.

56.    The money invested by JS was used for the following transactions:   internal transfer to ICON Choice Bank account in the amount of $500,000.00 and an outgoing wire transfer also in the amount of $500,000.00 to Bossington Groove.  Once received, the money transferred to the ICON account was sent via outgoing wire transfer to Bossington Groove.

57.    Through the ongoing investigation of the Department, Bossington Groove is an unlicensed money broker that appears to be involved in fraudulent upfront fee for funding scams with DRF Services, LLC, and Mallwood Park, and all entities are related to Lauren Degeer d/b/a/ Lauren Degeer, LLC, of 777 N. Rainbow Blvd., Ste. 120, Las Vegas, Nevada.

Note #13: NSOP and JS

58.    On July 6, 2022, a total of $550,000.00 was paid by JS via two US Bank cashier's checks[4] to NSOP. The cashier's checks were deposited in the NSOP Choice Bank account on July 6, 2022.

59.    In correspondence to the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #20. Details regarding the promissory note provided by Kuntz include an amount of $550,000.00 with a date of investment as July 6, 2022. It was also noted, "NSOP does not have possession of this document at this time

---

[4] No remitter was listed on the cashier's checks, but the amounts and date align with the promissory notes.

and continues to attempt to locate it. It is believed that Jamieson Capital may have possession of this document."

60.    Electronic correspondence from counsel for JS dated December 6, 2022, included a fully executed copy of promissory note number NSOP-008-2022. The promissory note listed the principal amount as $150,000.00. The undated promissory note was signed by Kuntz as president of NSOP and Carlson as treasurer of NSOP. The maturity date of the note is listed as 14 days starting at transfer of funds. Other documentation received from counsel for JS related to this transaction included a continuing guaranty which was signed by Carlson and Kuntz, both as guarantors.

61.    The money invested by JS was used for the following transactions:  $500,000.00 outgoing wire transfer for upfront funding fees to Bossington Groove; check #1005 payable to GP Partnership in the amount of $30,000.00; check #1006 payable to investor REP in the amount of $14,741.33 and check #1007 to investor BL for $14,741.32.  The checks payable to investors REP and BL appear to be monthly interest payments on previously issued unregistered promissory notes.

Note #14: NSOP and "Jamieson Capital Fund"/Jamieson Natural Resources Fund, LLC

62.    On July 7, 2022, a check in the amount of $755,946.51 was deposited into the ICON Choice Bank account. The check was dated June 29, 2022 and made payable to Jamieson Natural Resources Fund from Oasis Petroleum – Royalty. Carlson, in his capacity as managing member or investment adviser of the fund, extracted money from Jamieson Natural Resources investments and signed the check over to a Kuntz entity.

63.    In correspondence to the Department on September 12, 2022, counsel for Kuntz identified this transaction as Disclosure #22. It was also noted, "NSOP does not have

20

possession of this document at this time and continues to attempt to locate it. It is believed that Jamieson Capital may have possession of this document." Details regarding the promissory note provided by Kuntz include an amount of $755,947.00 with a date of investment as July 7, 2022.

64.     Documents received from ICON Architectural Group, LLC in response to the Departments' subpoena dated October 25, 2022, were reviewed by the Department. As of the date of this investigation report, documents pertaining to Note #14, or Disclosure #22 have not been located.

65.     Bank records subpoenaed by the Department show that the money invested by Jamieson Natural Resources Fund was used for the following transactions:  outgoing wire transfer for upfront funding fees to Bossington Groove in the amount of $500,000.00; cashier's check payable to Jamieson Natural Resources for $50,000.00 and two separate internal transfers for $100,000.00 each, totaling $200,000.00, to the NSOP Choice Bank account.

66.     On July 19, 2022, the day after service of the Department's Orders, $200,000.00 of investor money that was sent to the NSOP Choice Bank account was then transferred to the JCF Bell Bank account and used by Carlson for the following transactions: on July 21, 2022, a payment in the amount of $50,065.63 was made to the JCF Bell Bank line of credit for Ln ****1545; also on July 21, 2022, a cashier's check in the amount of $151,871.01 from JCF Bell Bank was issued and on July 25, 2022 deposited into the JCF Aspire Bank account; also on July 25, 2022 Carlson withdrew $130,000.00 from the JCF Aspire Bank account and deposited it into Carlson's personal Aspire Bank account; and

on August 4, 2022, Carlson withdrew another $2,500.00 from the JCF Aspire Bank account and deposited it into Carlson's personal Aspire Bank account.

67.     After transferring the $130,000.00 of investor money from the JCF Aspire Bank account into his personal Aspire Bank account, Carlson used the investor money for the following personal expenses on July 25, 2022: an automatic payment to loan 71-631 for a boat lift in the amount of $565.21; an automatic payment to loan 71-709 for a mortgage payment on his personal lake home in the amount of $632.88; and an automatic payment to loan 71-385 for a home equity line of credit in the amount of $1,855.67. On July 27, 2022, Carlson used investor money for the following personal expenses: payment to Alerus Financial for a mortgage payment in the amount of $2,004.62; payment to a 1st Bankcard credit card in the amount of $15,978.08; and a check in the amount of $10,000.00 payable to Carlson. On July 28, 2022, Carlson wrote a cashier's check payable to himself in the amount of $65,000.00 and deposited it at Western State Bank.

68.     On July 29, 2022, Carlson used investor money for the following personal expenses: payment to a 1st Bankcard credit card in the amount of $10,000.00; and a cashier's check payable to himself in the amount of $15,000.00 which was deposited at Gate City Bank. On August 1, 2022, Carlson made a payment in the amount of $1,359.97 toward his personal boat loan with Capital Credit Union and on August 3, 2022, a payment in the amount of $10,000.00 to Winthrope & Weinstine for legal fees related to matter #022105.00001.

69.     On August 17, 2022, Carlson used investor money for the following personal expenses: an automatic payment to loan 71-709 for a mortgage payment on his personal lake home in the amount of $571.51; and an automatic payment to loan 71-385 for a

home equity line of credit in the amount of $1,673.74. Additionally, on August 25, 2022:

an automatic payment to loan 71-631 for a boat lift in the amount of $565.21 and payment

to a 1st Bankcard credit card in the amount of $10,000.00. On August 30, 2022, Carlson

wrote check #12346 to himself in the amount of $12,000.00.

70.    On September 1, 2022, Carlson used investor money for the following personal

expenses: a payment in the amount of $1,359.97 toward his personal boat loan with

Capital Credit Union; and wrote himself a cashier's check in the amount of $7,400.00,

which was deposited at Gate City Bank. On September 8, 2022, Carlson wrote a check

payable to himself in the amount of $5,000.00. On September 13, 2022, Carlson made

an automatic payment to loan 71-709 for a mortgage payment on his personal lake home

in the amount of $718.22. On September 14, 2022, Carlson wrote a check payable to TS

Dock & Lift in the amount of $5,000.00 and on September 16, 2022, an automatic

payment to loan 71-385 for a home equity line of credit in the amount of $1,977.83

71.    As stated above, Carlson was served with the Department's Orders on July 18,

2022. Carlson transferred investor money into his personal accounts for personal use

over the next two months in blatant violation of the Department's Orders.

Note #15: NSOP and BC

72.    On July 22, 2022, Kuntz received an incoming wire in the amount of

$3,000,000.00 into his Morgan Stanley Smith Barney account from investor BC, a

resident of North Dakota.

73.    In correspondence with the Department on September 12, 2022, counsel for Kuntz

identified a promissory note between NSOP and BC. Promissory note number NSOP-

008-2022, in the amount of $3,000,000.00 is dated July 21, 2022, with a maturity date of

November 1, 2022. This note is listed as Disclosure #17. A copy of promissory note number NSOP-008-2022 was provided by Kuntz's counsel. The promissory note was issued by NSOP and signed by Kuntz as president of NSOP. The maturity date of the note is listed as November 1, 2022.

74.    Other documents received from Kuntz' counsel related to this transaction include an amortization schedule, security agreement and continuing guaranty. The security agreement is signed by Kuntz as president of NSOP. The continuing guaranty document is signed by Kuntz, Randy Miller, Chad Miller and J. Michael Baggett, as guarantors.

75.    The money invested by BC was used for the following transactions: three outgoing wires for upfront funding fees totaling $2,723,500.00 to DRF Services, LLC and two Automated Clearing House (ACH) payments totaling $276,533.70 to NSOP Choice Bank account. The first ACH payment in the amount of $100,000.00 deposited into the NSOP Choice Bank account was used in part to make the following payments: check #1021 payable to investor REP in the amount of $15,625.00; check #1022 payable to investor BL in the amount of $14,236.13; check #1023 payable to investor MEH in the amount of $14,236.13; check #1024 payable to investor DN in the amount of $14,236.13; and an ACH payment payable to investor BC in the amount of $15,625.00.

76.    The second ACH payment in the amount of $176,533.70 was used in part to make the following transactions: check #1025 payable to investor BL in the amount of $21,874.94; check #1026 payable to investor REP in the amount of $21,874.96; check #1027 payable to investor DN in the amount of $21,874.96; check #1028 payable to investor MEH in the amount of $21,874.96; and an ACH payment payable to BC in the amount of $15,625.00

77.    The checks and ACH payments payable to investors BL, REP, DN and MEH appear to be the use of investor BC money to make monthly interest payments on the previously issued and subsequently renewed unregistered promissory notes to those four investors, and a return of investor BC's own money misrepresented as an interest payment on the purchased NSOP-005-2022 promissory note.

Note #16:  NSOP and BL

78.    Documents received from Carlson's counsel on July 26, 2022, include a signed copy of promissory note which was issued by NSOP to BL, a North Dakota resident. Promissory note number NSOP-08-2022, in the amount of $1,250,000.00, does not list a date of the investment, however the maturity date "shall mean 14 days starting at transfer of funds." The promissory note is signed by Kuntz as president of NSOP, the issuer, and Carlson on behalf of Nova DC, LLC, which is a private fund controlled by Carlson as managing member.

79.    Through the Department's investigation, another copy of the same promissory note number NSOP-08-2022 was provided by BL. However, the promissory note that BL provided is signed by Kuntz as president of NSOP, the issuer, and Carlson as treasurer of NSOP. Based upon the documentation provided it appears that the promissory note provided by Carlson was modified or changed before being submitted to the Department.

80.    On June 30, 2022, through internal account transfers at First International Bank & Trust, investor BL's money was initially deposited into the Nova DC First International Bank & Trust checking account, an account controlled by Carlson. Carlson used the money invested by BL for the following transactions: $750,000.00 outgoing wire transfer for upfront funding fees to Bossington Groove and $500,000.00 transferred to the JCF

First International Bank & Trust account. Once received, the money transferred to the JCF First International Bank & Trust account was sent via outgoing wire transfer to Bossington Groove. Neither Kuntz nor his counsel identified promissory note number NSOP-008-2022 in correspondence to the Department dated September 12, 2022.

## CONCLUSIONS OF LAW

81.    The Department has jurisdiction over the subject matter of these proceedings and Respondents, Kuntz, Carlson, NSOP, and JCF.

82.    The promissory notes or other evidence of indebtedness offered for sale and/or sold by Respondents in North Dakota as described above are "securities" as defined in N.D.C.C. § 10-04-02(19). N.D.C.C. § 10-04-04 requires that securities offered for sale or sold in North Dakota be registered or exempt from registration.

83.    The promissory notes or other evidence of indebtedness offered for sale and/or sold by Respondents in North Dakota as described above, have not been registered with the Department under N.D.C.C. §§ 10-04-07, 10-04-07.1, 10-04-07.2, 10-04-08, or 10-04-08.1; are not exempt securities under N.D.C.C. § 10-04-05; and have not been offered for sale or sold in exempt transactions under N.D.C.C. § 10-04-06; and are not federal covered securities or have not properly filed as federal covered securities under N.D.C.C. § 10-04-08.4. The offers and/or sales of the subject investments were made in violation of N.D.C.C. § 10-04-04.

84.    Respondents NSOP and Kuntz utilized, and Respondents JCF and Carlson acted as an unregistered broker-dealer or agent of the issuer, Respondent NSOP, in violation of N.D.C.C. § 10-04-10. These Respondents are jointly and severally liable to the investors for recission under N.D.C.C. § 10-04-17.

85.     The promissory notes or other evidence of indebtedness offered for sale and/or sold by Respondents, failed to disclose, falsely represented and omitted material facts constituting fraudulent practices under N.D.C.C. § 10-04-15. Additionally, Respondents misappropriated client money in violation of N.D.C.C. § 10-04-15.

86.     It is a violation of N.D.C.C. § 10-04-10.3(1)(c) for any person who is registered as an investment adviser, required to be registered, or is affiliated with or employed by a registered investment adviser firm, to create or cause to be created any record under § 10-04-10.3(1)(c), if such record contains a material misstatement or misrepresentation regarding a customer or a customer's investments and the person knew or should have known of the falsity of the information or acted in reckless disregard of the truthfulness of the information.  The documentation described in Paragraphs 10 through 70 of the Findings of Fact contradict the following assertions made by Respondent Carlson and JCF, through their counsel, in correspondence to the Department dated September 23, 2022, in connection with the examination and investigation herein:

"First, I am attaching for your reference copies of **three** promissory notes that are in Mr. Carlson's possession. Please note that in each case, they are in his possession solely because one of the funds he manages was the maker of the note. **He does not hold any records for any transactions related to National Sports Opportunity Partners other than those for which a company he manages was the maker**."

*                              *                              *

"Your letter also inquires as to Mr. Carlson's role with respect to these [other NSOP] promissory notes.
**Mr. Carlson did not have a brokerage relationship with respect to NSOP, and he did not receive any compensation or remuneration of any kind, direct or indirect, in connection with this matter**. Rather, he and Mr. Kuntz were long-time friends and associates, and Mr. Carlson believed this was a valuable investment opportunity. As a result, he was willing to discuss the matter with Mr. Kuntz and to sit in several meetings at which Mr. Kuntz presented the proposal to various investors. **Mr. Carlson**

27

**and Mr. Kuntz had several conversations about the overall structure of the investment, but Mr. Carlson was acting in his personal capacity as a friend and associate of Mr. Kuntz and not as an investment advisor.**"

(Emphasis added)

87.     The misrepresentations made to the Department, and the failure to promptly correct the records maintained constitute violations of N.D.C.C. § 10-04-10.3(1)(c) and N.D.C.C. § 10-04-15(1).

88.     The transactions referenced, and the conduct of Respondents found in the preceding FINDINGS OF FACT, including the violations of the Securities Act, N.D.C.C. Chapter 10-04 provisions concerning the sale of unregistered securities, are incorporated into these CONCLUSIONS OF LAW by reference and are grounds for the statutory violations cited.

89.     Pursuant to N.D.C.C. § 10-04-16(1), the Securities Commissioner has the authority to Order that a person Cease and Desist from violations of the Securities Act, to rescind transactions made in violations of the Securities Act, and to assess civil penalties in an amount not to exceed $10,000.00 for each violation of the Securities Act.  The violations described above are sufficient grounds for the Commissioner to assess civil penalties against the Respondents pursuant to N.D.C.C. § 10-04-16(1).

90.     This Order is necessary and appropriate in the public interest for the protection of investors.

### CEASE AND DESIST ORDER

IT IS ORDERED, pursuant to N.D.C.C. § 10-04-16 that the Respondents shall immediately CEASE AND DESIST from any further violations of the Securities Act, N.D.C.C. Chapter 10-04, including:

1.      Offering for sale or selling in North Dakota the subject securities, or any other securities however denominated, unless and until such securities have been registered with the Department or are exempt from registration under N.D.C.C. Chapter 10-04;

2.      Any further misappropriation of investor money under the control of the Respondents or making any misrepresentations to the investors in violation of N.D.C.C. § 10-04-15; and

3.      From any further violations of the Orders previously served.

### NOTICE OF AND ORDER FOR RESCISSION

**YOU ARE NOTIFIED** that the above-cited violations, together with the violations found in the previous Orders served, are sufficient grounds for an Order to rescind transactions made in violations of the Securities Act.   **IT IS ORDERED**, that Respondents Kuntz, Carlson, JCF and NSOP are jointly and severally liable to each of the investors in NSOP, as set forth in paragraphs 1 through 80 of the Findings of Fact herein, describing Notes #1 through #16, and shall make rescission of the transactions described within sixty days of the date of this Order, for the full amount paid for the securities by each investor, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, and less the amount of any income received on the securities by said purchaser, according to the provisions of N.D.C.C. §§ 10-04-16(1) and 10-04-17.

### NOTICE OF AND ORDER FOR CIVIL PENALTIES

**YOU ARE NOTIFIED** that the above-cited violations, together with the violations found in the previous Orders served, are sufficient grounds for the imposition of civil

29

penalties pursuant to N.D.C.C. § 10-04-16(1), in an amount not to exceed $10,000.00 for each violation. **IT IS ORDERED,** that Respondents Kuntz, Carlson, JCF and NSOP are jointly and severally liable for and shall pay a civil penalty of $2,880,000.00 to the North Dakota Securities Department based on the violations discussed above.

The civil penalties assessed herein are due and payable immediately upon the entry of this Order, except to the extent that a hearing has been timely requested by the Respondents.  If a hearing is requested, the Securities Commissioner expressly reserves the authority to modify this provision and to assess additional civil penalties, not to exceed $10,000.00 per violation, regarding the violations outlined above or any other violations subsequently discovered.  The Commissioner reserves the authority to direct any penalties to the North Dakota Investor Restitution Fund, for the purpose of repaying aggrieved investors, as appropriate.

**NOTICE OF RESERVATION OF COMMISSIONER'S AUTHORITY TO AMEND ORDER**

**YOU ARE HEREBY NOTIFIED** that the above-cited violations are sufficient grounds for the relief imposed in this Order. The Department's investigation of the Respondents continues, and the Commissioner expressly reserves the authority to Order additional relief under N.D.C.C. Chapter 10-04, regarding the violations outlined above, any other violations subsequently discovered, or any future securities violations or violations of this order, in the public interest and for the protection of investors.

**NOTICE OF RIGHT TO REQUEST A HEARING**

**YOU ARE NOTIFIED** that pursuant to N.D.C.C. § 10-04-12 you may request a hearing before the Securities Commissioner if such a request is made in writing <u>WITHIN</u>

<u>FIFTEEN (15) DAYS AFTER THE RECEIPT OF THIS ORDER.</u> The Respondents have

the right to be represented by legal counsel at the hearing.

   **IN TESTIMONY WHEREOF**, witness my hand and seal this 24th day of April,

2023.



Karen J. Tyler, Securities Commissioner
North Dakota Securities Department
600 East Boulevard Ave.
State Capitol – Fourteenth Floor
Bismarck, ND  58505-0510
(701) 328-2910