**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re:

| | |
|---|---|
| **Jamieson CAPEX Fund, LLC** | Bankr. No. 24-30422 |
| Debtor. | Chapter 11 |

### NOTICE OF MOTION TO CONVERT CHAPTER 11 CASE OR IN THE ALTNERATIVE, MOTION TO REPLACE THE DEBTOR IN POSSESSION AND EXPAND THE SUBCHPATER V TRUSTEE'S POWERS

The United States Trustee's Office has filed a motion to convert this chapter 11 case or in the alternative, to replace the debtor in possession. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in these bankruptcy cases. If you do not have an attorney, you may wish to consult one.

Any response to the Motion must be filed and served no later than 21 days of the filing of this motion pursuant to Rule 6004(b) of the Federal Rules of Bankruptcy Procedure. UNLESS A RESPONSE OPPSOING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WIHTOUT A HEARING.

Dated: November 22, 2024

                                                          MARY R. JENSEN
                                                          ACTING UNITED STATES TRUSTEE
                                                          REGION 12

                                                          /s/ Sarah J. Wencil
                                                          Sarah J. Wencil
                                                          Trial Attorney
                                                          U.S. Courthouse Suite 1015
                                                          300 South Fourth Street
                                                          Minneapolis, MN 55415
                                                          Sarah.J.Wencil@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | |
| **Jamieson CAPEX Fund, LLC** | Bankr. No. 24-30422 |
| **Debtor.** | Chapter 11 |

**MOTION TO CONVERT CHAPTER 11 CASE OR IN THE ALTNERATIVE, MOTION TO REPLACE THE DEBTOR IN POSSESSION AND EXPAND THE SUBCHPATER V TRUSTEE'S POWERS**

COMES NOW the Acting United States Trustee (UST) and moves the court to convert this chapter 11 case or in the alternative, remove the debtor-in-possession and expand the Subchapter V Trustee's powers.  In support of her motion, she states the following:

1. The United States Trustee has standing to bring this motion pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586.  This matter is a core-proceeding arising under 28 U.S.C. § 157(b)(2)(A).  The bankruptcy court has jurisdiction pursuant to 28 U.S.C. § 1334.  This motion is brought pursuant to 11 U.S.C. §§ 1112(b), 1183(b)(2) and 1185.

**Facts**

2. The Debtor commenced this case by filing a subchapter V petition under chapter 11 on September 22, 2024.  Thomas Kapusta is the appointed subchapter V trustee in the case. The Debtor is a real estate investments and development entity.  Ex. 9, p. 6 Ln. 3.

3. Prior to the filing of the bankruptcy case, the Debtor's President Jeremy Carlson and his financial firm Jamieson Capital Financial LLC were subject to an investigation by the North Dakota Security Commission (Commission).  The public records of the allegations and settlements are attached as follows:

   a. In re Jamieson Capital Financial LLC and Jeremy Carlson, dated July 15, 2022. Ex. 1.

   b. Stop Order Suspending Sale of Securities (including Debtor), dated July 15, 2022.

Ex. 2.

    c.    Consent Order, dated December 11, 2023.  Ex. 3.

    d.    Cease and Desist Order; Order for Rescission dated December 22, 2023.  Ex. 4.

    e.    In re NSOP, et. al, dated April 24, 2023.  Ex. 5.

    f.    Administrative Consent Order, dated January 10, 2024.  Ex. 6.

5.    When the Debtor filed its petition, it also filed Schedules Ex. 7.  Later, the Debtor filed an original Statement of Financial Affairs (Ex. 11).

6.    The UST conduced sections 341 meetings on October 24, 2024  (Ex. 8) and November 7, 2024 (Ex. 9).

7.    After the meetings of creditors, the UST sent a letter to Counsel requesting documents and requesting that the Debtor amend the schedules and statements for various inaccuracies.  Ex. 10.   The UST also requested the 2020 – 2022 tax returns at the second meeting of creditors held on November 7, 2024.  On November 22, 2024, the Debtor provided the promissory notes that were taken by the Commissioner and partial bank statements and represented it was working amending the schedules and obtaining other documents.

8.    The Debtor did file an amended Statement of Financial Affairs on November 13, 2024.  Ex. 12 (Doc. 33).

9.    While the Debtor has disparaged the Commission in several pleadings before this Court, such accusations have no relevance to this bankruptcy case.  The Debtor was subjected to a cease-and-desist order directing the Debtor to cease selling equity interests due to the conduct of Carlson and Jamieson Capital Financial LLC (Ex. 2) and the Debtor subsequently signed a consent to agree to cease such activities. Ex. 3.   That consent Order was signed by then President Brian Kounovsky on November 2, 2023.

10.    The relevance of the Commissioner's activities is the disclosure of Carlson's connections to the various entities listed on Schedule B and F of the schedules and Carlson's acknowledgement of the connections at the section 341 meetings.

11. On Schedule B, No. 11, Carlson testified that the accounts receivable related to funds taken by the Commissioner. Ex. 8, p. 10 Ln 21- p. 11 Ln. 21.

12. On Schedule B, No. 12, Nos. 15-1 – 15.9 (Ex. 7), the Debtor listed several of the real estate projects that the Debtor invested money into. Carlson testified that none of the real estate investments have generated income to the Debtor. See Ex. 8, p. 11, Ln 22 to p. 22, Ln. 17.

13. On Schedule B, No. 12, No. 15.10 (Ex. 7), the Debtor lists a note between the Debtor and NSOP. Carlson testified that the note was made in 2021-22. He testified that the note was paid off in early 2024 when NSOP directly paid a third-party Nova DC, to whom the Debtor owed money. Ex. 8, p. 22 Ln. 19 – p. 23 Ln. 24.

14. Carlson testified that NSOP is an unrelated entity. Ex. 8, p. 24 Lns. 3-6. In Exhibit 5, the Commissioner described the entity as National Sports Opportunity Partners, LLC operated and controlled by Michael R. Kuntz. Michael R. Kuntz is listed as an equity holder of the Debtor on the original and amended Statement of Financial Affairs. See Exs. 11 & 12.

15. The entity that received the funds --Nova DC-- is an additional investment fund created by Carlson for bitcoin in which he holds a small interest. See Ex. 8, p. 24 Ln. 10-22. Exhibit 1 lists the entity as "Investor Mineral Holdings, LLC, also known as Nova DC, LLC." Ex. 1, ¶ 7.

16. On Schedule B, No. 12, No. 15. (Ex.7), the Debtor lists a note owed by Secure Income Fund. Exhibit 1 lists Secure Income Fund as another investment entity created by Carlson (¶ 7). Carlson testified that the Debtor lent the Secured Income Fund money in approximately 2018 or 2019. Ex. 8, p. 25 Ln. 1 – p. 25 Ln. 4. At the second meeting, Carlson testified that he served as manager and president. Ex. 9, p. 24, Lns. 18-24.

17. On Schedule B, No. 70 (Ex. 7), the Debtor lists a receivable due from JAMCO, LLC for $57,308.33. Carlson testified that JAMCO, LLC is a mineral development. Ex. 8, p. 27 Lns. 15-19. At the second meeting of creditors, Carlson testified that he and Brian Kounovsky owned JAMCO, LLC Ex. 9, p. 20 Ln 15 – p. 21 Ln. 7. Brian Kounovsky is a

former officer of the Debtor and shareholder.  See Exs. 11 & 12.  Carlson also testified that Kounovsky – through other entities – may have invested in some of the same projects as the Debtor.  Ex. 9, p. 21, Lns. 8-21.

18. Carlson testified that as part of the settlement with the Commissioner, he agreed to use his "best efforts" to repay the investors of the related LLCs.  Ex. 8, p. 38 Lns. 3-25.

19. On Schedule F (Ex. 7), Carlson testified that several creditors were related entities.

20. On Schedule F, creditor 3.1, Carlson testified Amber Carlson is his counsel.  Ex. 8, p. 39, Lns. 7-15.

21. On Schedule F, creditor 3.3, Carlson testified that Brad Sunderland invested $100,000 in Main Street Investments that was lent to the Debtor. Ex. 8, Lns. 3 – 11.  Carlson also testified that creditor 3.14 Jeff Johnson also invested   in Main Street Investments, which funds were lent to the Debtor.  Id. p. 47, Lns. 3-14.  The Commissioner cited Mainstreet Investment Partners, LLC as another entity created by Carlson.  Ex. 1.  Mainstreet Investment is separately listed on Schedule F at 3.17 (Ex. 7).  Carlson testified that he founded and "ran" Mainstreet "as the operator."  Ex. 8, p. 48, Lns. 2-13.

22. On Schedule F, creditors 3.10 Jamieson Legacy Fund, 3.11 Jamieson Medical, Jamieson Natural Resources Fund, LLC are all funds created by Carlson.  Ex. 1.  Carlson testified that the Legacy Fund was set up to fund other funds (Ex. 7, p. 45 Lns. 1-10), Jamieson Medical was set up for medical cannabis (*Id.*, p. 45, Lns. 11- 25), and Jamieson Natural Resources is a fund for investing in the Bakken Oil Fields (*Id.*, p. 46, Ln 1- p. 47, Ln. 2).

23. Counsel for Jamison Natural Resources Fund (Natural Resources) appeared and both meetings and asked questions at the second meeting.  Ex. 9, p. 2, Ln. 23 – p. 20, Ln. 10.  Carlson testified that he was the President of Natural Resources, and that Brian Kounovsky and Mike Rydell were also involved in Natural Resources.  Ex. 9, p. 5, Ln.4-25.  He also testified that he made the day-to-day decisions for Natural Resources.  *Id.*, p. 6, Ln. 1-7.  Over the

course of the questioning, counsel for Natural Resources asked whether Natural Resources adequately disclosed that it would invest in companies outside the oilfield business (*Id.*, p. 3); why Natural Resources was making loans rather than making distributions to members (*Id.*, p. 9, Lns. 23- p. 10 Ln. 5); why the loans contained no repayment terms (*Id.*, p. 11, Lns. 3 -22); and other irregularities in the loans.

24.    On Schedule F (Ex. 7), creditor 3.17 MJM Investments, LLC is listed as $0. Carlson testified that MJM Investment was a sub debt that was paid off for $500,000 when Brian Kounovsky was the President. Ex. 8, p. 48 Lns. 14-p. 13.   At the second meeting, Carlson testified that MJM Investments was held by equity holder Mark Merrick.   Ex. 9, p. 28, Ln. 7 – p. 29, Ln. 2.

25.    At the second meeting, Carlson testified that the Debtor has never generated income.  Ex. 9, p. 29, Lns. 3-6.   The amended Statement of Financial Affairs discloses negative revenues in 2023 and 2022.   See Att. Ex. 12.    The October operating report filed at docket no. 42 discloses no income generated in October and $9,570.46 of funds on hand.

26.    The amended Statement of Financial Affairs at No. 28 do not identify any other parties as directors or officers.   Ex. 12.

## Legal Authority for Conversion

Section 1112(b) provides that the Court shall convert or dismiss a case for cause unless the Court finds that the appointment of a trustee is in the best interest of the estate.   11 U.S.C. § 1112(b)(1).   Although §1112(b)(4) fails to define the term "cause," it provides a list of circumstances that can support conversion of a chapter 11 case.   "Sections 1112(b)(4) and 1185(a) of the bankruptcy code provide non-exclusive lists of causes that require conversion or removal respectively."   *In re Duling Sons, Inc.,* 650 B.R. 578, 581(Bankr. S.D. 2023)(Tanabe, J.)(*citing In re ComedyMX, LLC*, 647 B.R. 457, 464 (Bankr. D. Del. 2022) and finding that removing a debtor in possession under Section 1185(a) was in the best interest of creditors over conversion).

Courts have found cause when there are conflicts of interest between insiders and investigations into the insider's claims or actions:

> Courts "have frequently identified other factors that support a finding of cause [under §§ 1112(b)(1) or 1185(a)] including where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims of the estate." In re No Rust Rebar, Inc., 641 B.R. 412, 423 (Bankr. S.D. Fla. 2022) (citing In re Picacho Hills Utility Co., Inc., 518 B.R. 75, 82 (Bankr. D.N.M. 2014), and In re Ashley River Consulting, LLC, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015) (internal quotations omitted)). An incurable conflict is created where a principal of a debtor "would have to investigate, and if necessary, sue himself and his own entities." In re No Rust Rebar, 641 B.R. at 425.

*In re Duling Sons*, 650 B.R. at 581.

Cause also exists for substantial and continuing losses or diminution of the estate and the absence of a reasonable likelihood of reorganization. 11 U.S.C. § 1112(b)(4)(1). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) retained former Section 1112(b)(1) as renamed Section 1112(b)(4)(A). The District of Minnesota opined that a determination under Section 1112(b)(1) [Former Section 1112(b)(4)(A)] is made by considering the following factors:

> A finding that the debtor suffered continuing losses or maintained a negative cash flow "after the entry of the order for relief" suffices to demonstrate continuing loss to the estate. *Fort Knox,* 2002 WL 1842452, at *2. Absence of likelihood of rehabilitation is satisfied by a showing that the debtor is unable to get the business up and running again on a firm base. *In re Minnesota Alpha Found.*, 122 B.R. 89, 93 (Bankr.D.Minn.1990); *Economy Cab*, 44 B.R. at 725 n. 2. *113  Under § 1112(b), " 'rehabilitation' contemplates the successful maintenance or re- establishment of the debtor's business operations...." *Minnesota Alpha*, 122 B.R. at 93.

*Loop Corp. v. U.S. Trustee*, 290 B.R. 108, 112-13 (D. Minn. 2003), *aff'd* 379 F.3d 511 (8th Cir. 2004); *cert. denied* 543 U.S. 1055, 125 S. Ct. 915, 160 L. Ed.2d 778 (2005); *see also In re Economy Cab & Tool Co., Inc.,* 44 B.R. 721, (Bankr. D. Minn. 1984) (citations omitted). The diminution in the estate need not be significant. *In re East Coast Airways, Ltd.*, 146 B.R. at 336. "All that need be found is that the estate has suffered some diminution in value. *Id.*

(citing *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)).

A finding of accruing chapter 11 administrative costs is sufficient to find negative cash flow.  *Loop*, 379 F.3d. at 516.

Cause also exists for failure to provide documents reasonably requested by the United States Trustee.  11 U.S.C. § 1112(b)(4)(H).

If cause has been established, the burden shifts to Debtor to prove the case falls within the "unusual circumstances" exception to § 1112(b)(1)'s mandatory conversion.  *In re Miell*, 419 B.R. 357, 367 (Bankr. N.D. Iowa 2009)(citing *In re Dovetail,* 2008 WL 5644889, at *4 (Bankr. N.D. Ill. 2008)).  "The Code does not define 'unusual circumstances.'  Nevertheless, 'the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.'"  The phrase contemplates conditions that are not common in Chapter 11 cases.  *Pittsfield Weaving Co.,* 393 B.R. at 274.  "Courts have significant discretion in determining whether unusual circumstances exist which weigh against conversion or dismissal." *Id.* (citations omitted).

## Legal Authority for Removal

Section 1185 states that the Court shall remove a debtor in possession for cause, including fraud, dishonesty, in competence, or gross mismanagement of the affairs of the debtor…."  11 U.S.C. § 1185(a).  The language mirrors the language for the appointment of a trustee under Section 1104(a)(1).

A conflict of interest is cause to remove the Debtor in Possession.  *See* Hon. Paul W. Bonapfel's "A Guide to the Small Business Reorganization Act of 2019" on the topic of removal resulting from a conflict of interest.  Revised June 2022 (the "Guide").[1]  The Guide cites to *In re No Rust Rebar, Inc.,* noting "[a]n incurable conflict of interest between the debtor's principal

---

[1] Guide_to_the_Small_Business_Act_of_2019_(Hon._Paul_Bonapfel_rev._06-2022).pdf (uscourts.gov);https://www.flsb.uscourts.gov/sites/flsb/files/documents/Guide_to_the_Small_Business_Act_of_2019_%28Hon._Paul_Bonapfel_rev._06-2022%29.pdf.

and the estate – such as the possibility of claims against the principal or affiliates – may also establish cause." *Id.* at 81 n. 196. The Court in *No Rust Rebar* found that the debtor's commingling of assets with affiliated entities and lack of corporate formalities constituted incompetence or gross mismanagement at best, or fraud and dishonesty at worst, but overall created an "incurable conflict" between the interest of the debtor and its principal. 641 B.R. 412, 423 (Bankr. S.D. Fla. 2022); *see also In re Duling Sons, Inc. (supra)*.

If a debtor is removed as the debtor in possession, the subchapter V trustee's duties are expanded under § 1183(b)(5). 11 U.S.C. § 1183(b)(5) states, "(b) Duties. The *trustee shall*…(5) if the debtor ceases to be a debtor in possession, *perform the duties* specified in in section 704(a)(8) and paragraphs (1), (2), and (6) of section 1106(a) and be authored to operate the business of the debtor." 11 U.S.C. § 1183(b)(5)(emphasis added).

If a debtor-in-possession is removed, it is appropriate in this case for the court to further expand the duties of the subchapter V trustee powers under Section 1183(b)(2) to include investigating the Debtor and filing a report pursuant to Section 1106(a)(3) and (4). The Code does not specify "cause" for the Court to expand duties under Section 1183(b)(2). Collier provides that the standard "should not be higher than the stand for cause…[[f] removing a subchapter V debtor in possession under section 1185(a)." Thus, if the Court finds cause to remove the debtor-in-possession, cause also exists to expand the subchapter V trustee's powers. *See also In re AJEM Hosp., LLC*, 2020 WL 3125276 *1 (Bankr. M.D.N.C. Mar. 23, 2020)(expanding a subchapter V trustee's duties where there existed the potential for intercompany claims); In re Ozcelebi, 639 B.R. 365, 383 (Bankr. S.D. Tex. 2022) (noting cause may exist were there are questions about the debtor's financial condition, property of the estate, debtor's management of estate, and the accuracy and completeness of disclosures and reports).

The expanded powers do not include the ability of the Subchapter V Trustee to propose a Plan. Subchapter V reserves that right exclusively to the Debtor. *See* 11 U.S.C. § 1189(a).

**Argument**

The widespread conflicts of interests in this case is cause to replace a debtor in possession or convert the case. In the present case, the managing agent and founder of the Debtor is conflicted to act as debtor-in-possession in this case and the conflicts are so pervasive as to constitute cause to either convert this case or remove the debtor in possession. Mr. Carlson appears to have been in control of the Debtor when the Debtor made loans to other entities controlled by Mr. Carlson, and when the Debtor received loans controlled by Mr. Carlson. In the instance of Jamieson Natural Resources, one of the largest unsecured creditors, Mr. Carlson is the removed operator of that creditor. Further, there appear to be transfers of value to insiders of almost $1 million within the past year, including to an entity related to Mr. Carlson. Through the consent orders entered with the Commissioner, Mr. Carlson consented to repay the investors in the Debtor, which gives the appearance of bias to the equity interests over the creditors in the case.

The Debtor has not had a return on its real estate investments or net income during its existence. The Debtor has not produced the tax returns requested for 2020-2022 to verify Mr. Carlson's testimony. The Plan filed by the Debtor at Doc. 37 proposes to pay creditors in full; however, the Plan projects that there may be no payments for up to three years. See Plan, Section 7.04. Even then, any recovery is dependent on recoveries against North Dakota (Jamieson CAPEX Fund, LLC v. Tyler, et al, Adv No. 24-7030) and anticipated litigation against First International Bank and Trust. The purpose of keeping the case in chapter 11 appears to be to avoid having to liquidate the promissory notes and notes receivable on Schedule B, several of which involve insider interests. Essentially, creditors are being asked to wait for three years for possible litigation recoveries in favor of the interests of equity holders.

At present, the Plan proposes to pay administrative expenses out of the recoveries from the litigation. *Id*. Section 3.02. Given the proposed litigation, administrative costs will continue to accrue in this case. The Plan admits that the Debtor is administratively insolvent and will use litigation recoveries to meet administrative expenses. Plan, Section 7.02.

Accruing administrative costs is cause to convert this case. As a real estate investment fund, the Debtor is not seeking to "rehabilitate" a business. A trustee can manage the real estate investments and determine the best interests of the estate similar to a chapter 11 debtor-in-possession. But unlike this debtor-in-possession, a trustee will be an independent party.

The Debtor has suggested on the record that it is interviewing possible chief restricting officers. Aside from the fact that such a person would likely be beholden to the board of the Debtor and there is no disclosure of who that person will be and how the Debtor will pay for such a party. The Plan appears to commit excess money to "conflicts counsel" to review Debtor's counsel's possible conflicts. There does not appear to be additional fund to finance a chief restructuring officer.

The Debtor has taken many steps to move the case along quickly to prevent an independent fiduciary from looking at the transactions in this case. It is a good strategy on the Debtor's part, but it is also rewarding the Debtor for failing to disclose conflicts and for failing to allow the Court to vet those conflicts at the beginning of the case. Very few of the connections and conflicts set forth above are evident from the Debtor's original schedules and statements. The initial disclosures in the case were poor. This has all been drawn out from the section 341 meetings and third partites. Given the conflicts that exist in this case, the debtor-in-possession should be removed to provide the parties with an independent fiduciary.

The UST prefers conversion over the removal of the debtor-in-possession for the reason that there are no funds to fund a chapter 11 subchapter V trustee. However, if the Court did remove the debtor in possession in favor of the subchapter V trustee it will also be necessary in this case to expand his powers under Section 1183(b)(2) to allow him to have full investigation powers. A chapter 7 trustee is beset equipped to evaluate the assets of the estate and to act in the parties-in-interests best interests.

WHEREFORE, the UST requests that the Court convert the above named chapter 11 case or grant such other relief as it deems necessary.

Dated: November 22, 2024

MARY R. JENSEN
Acting United States Trustee
Region 12

 /s/ Sarah J.   Wencil
Sarah J.   Wencil
Trial Attorney
Office of U.S. Trustee
Iowa Atty. No. 14014
1015 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350

## VERIFICATION

I, Sarah J. Wencil, Trial Attorney for the United States Trustee, do hereby certify that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   November 22, 2024

>    /s/ Sarah J. Wencil
>    **Sarah J. Wencil**