IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY**

Comes now Jamieson CAPEX Fund, LLC ("CAPEX" or the "Debtor"), by and through undersigned counsel, in opposition to the Motion for Relief from Automatic Stay (the "Motion," as found at DE #56) filed by Jeff Johnson ("Mr. Johnson"), and states as follows:

**I.      Introduction**

Being without counsel in a state court case, CAPEX petitioned for bankruptcy protection as a summary judgment motion pended, hoping to halt the litigation before any adverse findings could be made or an adverse judgment could be entered. While the state court litigation is not what drove the Debtor to reorganize in chapter 11, the pending summary judgment motion was most certainly what influenced the timing of CAPEX docketing a petition for relief. And so, within hours of seeking recourse in this Honorable Court, the Debtor (through counsel) contacted the state court counterparty (also through counsel) to apprise of the filing of this case.

Mr. Johnson was that state court counterparty and, once on actual notice of this bankruptcy, he elected to simply plow ahead with the litigation. First he secured a default ruling on the summary judgment motion, premised upon the request being unopposed. Then he prepared and filed a proposed form of judgment, so as to cement the finality of his uncontested victory. Now, faced with a suit for this brazen violation of the stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay"), Mr. Johnson simultaneously insists (i) he did not

1

actually violate the Automatic Stay; and (ii) the Automatic Stay should be annulled to retroactively allow his statutorily-violative actions.

In support of these contentions, Mr. Johnson urges that (i) the bankruptcy petition in this case was not "accepted" until four days after its filing, DE #57 at ¶ 4; (ii) there is an absence of adequate protection, DE #56 at ¶ 7; and (iii) *nunc pro tunc* blessing of the state court judgment is necessary to protect an assertion of nondischargeability under Section 523 of Title 11 of the United States Code, DE #56 at ¶ 6. These contentions are each without merit.

As extrapolated upon *infra*, it is well settled that CAPEX's bankruptcy petition triggered the imposition of an order for relief at the precise moment that petition was filed—not when notice of the meeting of creditors, and certain related deadlines, was later mailed. It is equally well settled that "adequate protection" is a doctrine wholly inapplicable to an unsecured litigation claimant. And it is, too, well settled that the nondischargeability provisions of Section 523 are immaterial in cases where the debtor is not a natural person.

The egregiousness of Mr. Johnson's actions can be scantly understated. He was on notice of this case within hours of the petition being docketed. He was, too, on notice of the Automatic Stay within hours of the petition being docketed. Yet he did not halt his actions, he did not come to this Honorable Court to timely seek stay relief, and he did not put on ice his state court claims in favor of filing a claim herein and seeing if an objection might ensue. Rather, he pushed ahead, uploading a proposed form of judgment to solidify the victory by way of pleading default. While CAPEX was busy working to reorganize in this tribunal, Mr. Johnson was working to sew up a victory in another tribunal. Such is precisely the sort of behavior forbade by the Automatic Stay, such is why Mr. Johnson is now a defendant in an adversary proceeding, and such is not conduct that ought to be countenanced by way of a retroactive nullification of the Automatic Stay.

**II.     Relevant Facts**

1.     On or about June 29, 2023, Mr. Johnson filed suit against, *inter alia*, CAPEX in state court.

2.     Subsequently, in August 2023, CAPEX filed an answer to the complaint, through counsel.

3.     In June 2024, counsel for CAPEX (being a person separate than the Debtor's bankruptcy counsel) moved to withdrew from the state court litigation, with the motion thereafter being granted on July 9, 2024.

4.     Approximately one month later, Mr. Johnson—knowledgeable that CAPEX was a legal entity no longer represented by counsel and, as such, no longer able to defend itself in the litigation—filed a motion for summary judgment.

5.     At 8:02 pm on September 22, 2024, CAPEX filed a petition for chapter 11 relief in this Honorable Court, DE #1, with the petition constituting an order for relief, 11 U.S.C. § 301(b), and thereby automatically "staying prepetition actions against [CAPEX]," *In re Paxton*, 596 B.R. 686, 694 (Bankr. N.D. Cal. 2019). *See also In re Honeycutt*, 228 B.R. 428, 430 (Bankr. E.D. Ark. 1998) ("Upon the filing of a voluntary petition in bankruptcy, an Order for Relief is automatically entered which triggers, under section 362(a) of the Bankruptcy Code, the automatic stay.").

6.     Slightly over one hour later, then-proposed bankruptcy counsel for CAPEX e-mailed state court counsel for Mr. Johnson, advising of both the bankruptcy filing and imposition of the Automatic Stay. *See* E-mail of September 22, 2024, attached hereto as Exhibit A.[1]

---

[1] The timestamp on the e-mail shows the message being sent at 10:28 pm because the timestamp is marked in Eastern Time.

3

7.　　　　More than three weeks later, Mr. Johnson, through counsel, filed a proposed form of judgment in the state court litigation, seeking entry of a final judgment against CAPEX.

8.　　　　After this proposed form of judgment was filed, but before it could be signed by a state court judge, counsel for CAPEX wrote to counsel for Mr. Johnson, again reminding him of imposition of the Automatic Stay and noting the filing of the proposed form of judgment was a violation thereof in need of remedy. *See* E-mail of October 21, 2024, attached hereto as Exhibit B.

9.　　　　Mr. Johnson took no action to withdraw the proposed form of judgment, with his counsel instead responding by indicating, *inter alia*, ". . . my team has reviewed and we will not be pursuing enforcement of any judgment against Capex in violation of the stay." *See* E-mail of October 23, 2024, attached hereto as Exhibit C.

10.　　　Two days later, the state court endorsed and entered Mr. Johnson's proposed form of judgment.

11.　　　On November 11, 2024, CAPEX brought suit against Mr. Johnson for violating the Automatic Stay. *See Jamieson CAPEX Fund, LLC v. Johnson*, Case No. 24-07028 (Bankr. D.N.D. 2024).

12.　　　Sixteen days later, Mr. Johnson filed a proof of claim in this case predicated, *en toto*, upon the post-petition state court judgment obtained in violation of the Automatic Stay. *See* Claims Register #4.

13.　　　More than two weeks later, Mr. Johnson filed the Motion, seeking to annul the Automatic Stay. *See* Motion, DE #56.

### III.     Argument: The Motion Should be Denied

#### a. Adequate Protection is Inapplicable to Unsecured Creditors

As a starting point, Title 11 of the United States Code (the "Bankruptcy Code") furnishes various enumerated grounds upon which a party may seek relief from the Automatic Stay. Mr. Johnson has plainly indicated that he is seeking relief under Section 362(d)(1) of the Bankruptcy Code, because he is without "adequate protection" for his post-petition state court judgment. Motion, DE #56, at ¶ 7. This is the only provision of Section 362 upon which the Motion is premised. Yet this contention is facially errant for the simple reason that unsecured creditors are not entitled to adequate protection in the first instance.

As recently noted by a neighboring court, "[t]here is no statutory requirement that unsecured creditors receive adequate protection, and the lack of adequate protection does not entitle an unsecured creditor to relief from the stay." *Official Comm. of Unsecured Creditors of Rancher's Legacy Meat Co. v. Ratcliff (In re Rancher's Legacy Meat Co.)*, 616 B.R. 532, 546 (Bankr. D. Minn. 2020) (quoting *In re R.F. Cunningham & Co.*, 355 B.R. 408, 412 (Bankr. E.D.N.Y. 2006)).[2] *See also In re SunEdison, Inc.*, 562 B.R. 243, 252 (Bankr. S.D.N.Y. 2017) ("Unsecured creditors like CSI do not have an interest in property of the estate that merits adequate protection. . .") (citing *In re Garland Corp.*, 6 B.R. 456, 462 (B.A.P. 1st Cir. 1980); *In re R.F. Cunningham & Co.*, 355 B.R. at 412); *In re Access Air, Inc.*, 2000 Bankr. LEXIS 2132, at *7-8 (Bankr. S.D. Iowa Mar. 27, 2000) (". . . adequate protection is not available to the unsecured creditor. The purpose of adequate protection is to ensure that a secured creditor receives the benefit of its bargain.") (citing 1 David G. Epstein et al., Bankruptcy § 3-27 (1992) (citing *In re Tellier*,

---

[2] The *Ratcliff* Court cites the quotation from *R.F. Cunningham* as being at 355 B.R. 413. Upon review of *R.F. Cunningham*, however, it appears the quotation is found on page 412. The citation is accordingly modified in this brief.

5

125 B.R. 348, 349 (Bankr. D. R. I. 1991)); *Martin v. Commodity Credit Corp. (In re Martin)*, 761 F.2d 472, 476 (8th Cir. 1985) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5839; H.R. Rep. No. 595, 95th Cong., 2d Sess. 339, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6295); *Unsecured Creditors' Committee v. Jones Truck Lines, Inc.*, 156 B.R. 608, 610 (W. D. Ark. 1992)); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 90 (2d Cir. 2003) ("The adequate protection provision of 11 U.S.C. § 361 protects only secured creditors.") (citing *Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y. 1993)); *Callaway Cmty. Hosp. Ass'n v. First N. Bank & Tr. (In re Chama, Inc.)*, 265 B.R. 662, 669 (Bankr. D. Del. 2000) ("Since the Bank's security interest is avoided, it is a general unsecured creditor. It is therefore, not entitled to any adequate protection.") (citing *In re Gallegos Research Group*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995); *Jones Truck Lines, Inc.*, 156 B.R. at 610; *In re Microwave Products of America, Inc.*, 94 B.R. 967, 970 (Bankr. W.D. Tenn. 1989); *In re Simasko Production Co.*, 47 B.R. 444, 448-49 (Bankr. D. Colo. 1985)); *Love v. Wiseman*, 614 B.R. 573, 587 (N.D. Cal. 2020) ("Similarly, Love's arguments regarding 'adequate protection' are misplaced because she was found to be an unsecured creditor and as an unsecured creditor, she was not entitled to adequate protection.") (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983); *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 90).

That an absence of adequate protection does not entitle Mr. Johnson to stay relief is paradigmatic for another, broader reason: unsecured creditors are normatively not entitled to stay relief on *any* grounds. As noted by the United States Bankruptcy Court for the Southern District of New York:

> Generally, unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy

law; that there should be an equality of distribution among creditors. An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code.

*In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992).

Plainly, Mr. Johnson wishes to secure his victory by default in the state court litigation. In lieu of engaging counsel and filing a brief in opposition to a pending summary judgment motion, CAPEX, being already cognizant that it would imminently seek to reorganize through chapter 11, elected to promptly file a petition for relief. The Motion suggests CAPEX was not justified in so doing, and ought to have nonetheless defended the state court case post-petition, even with the Automatic Stay in place. Yet this is simply not an argument that comports with governing law or the underlying purpose of the Automatic Stay, as so well explained by the *Leibowitz* Court.

It is not a coincidence that Mr. Johnson's counsel was notified of this within hours of the petition being docketed. CAPEX expressly relied on the Automatic Stay in not engaging counsel and defending the state court summary judgment motion, and CAPEX assumed (errantly) that no sophisticated litigant would intentionally run afoul of the Automatic Stay by continuing to prosecute a state court civil lawsuit once on actual notice of a bankruptcy case's pendency. This was a reasonable assumption in light of the absolute language of the Automatic Stay; Mr. Johnson's actions, by contrast, were neither reasonable nor lawful. And, to the extent he now endeavors to establish the extraordinary circumstances by which an unsecured creditor may be relieved of the rigors of the Automatic Stay, these facts—stained deeply by Mr. Johnson's wrongful conduct—assuredly do not meet the requisite burden.

### b. Section 523 is Inapplicable in Cases Where the Debtor is Not a Natural Person

With an absence of adequate protection not being a viable theory of stay relief, attention is properly shifted to Mr. Johnson's alternative argument: he needs such relief to support his

7

nondischargeability suit under Section 523(a)(19) of the Bankruptcy Code. Yet this theory does, too, falter, for a relatively simple reason: Section 523(a) claims are inapplicable in cases where the debtor is not a natural person.[3]

The Bankruptcy Code provides that "an *individual* debtor," 11 U.S.C. § 523(a) (emphasis added), shall not receive a discharge from a debt stemming from a violation of certain securities laws, 11 U.S.C. § 523(a)(19). In this case, Mr. Johnson has suffered absolutely no damages whatsoever on account of CAPEX's alleged violation of ministerial securities laws.[4] But such nuance need not be engaged for a far simpler reason: CAPEX is not "an individual."

The long-ago settled precedent of this judicial circuit is that "the exemptions embodied in 11 U.S.C. § 523(a) do not apply to corporate debtors." *Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985). *See also In re Wis. Barge Lines, Inc.*, 91 B.R. 65, 68 (Bankr. E.D. Mo. 1988) ("Following the Eighth Circuit's ruling in *Yamaha Motor Corporation U.S.A. v. Shadco, Inc.*, 762 F.2d 668 (8th Cir. 1985), this Court finds that the exceptions to discharge enumerated in Section 523(a) do not apply to corporate debtors."); *Boyle v. PMA Med. Specialists, LLC*, 754 F. App'x 93, 96 (3d Cir. 2019) (holding Section 523(a) to be inapplicable to corporate debtors); *Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000) ("Hurricane was a *corporate debtor*; the discharge-exception in 11 U.S.C. §§ 1141(d)(2) and 523(a)(1)(C), at issue here, applies only to *individual debtors*.") (emphasis in original); *Garrie v. James L. Gray, Inc.*, 912 F.2d 808, 812 (5th Cir. 1990) (". . . the 'willful and malicious injury' exception to discharge, like all of the

---

[3] The next three paragraphs of this Section III(b) are nearly identical to arguments made in a motion to dismiss a related counterclaim in the suit against Mr. Johnson for violating the Automatic Stay.

[4] While not the focus of this brief, this point merits attention: Mr. Johnson *needs* stay relief to de-nullify his state court judgment since he would be highly unlikely to actually succeed in showing an entitlement to economic damages in a properly contested matter where CAPEX is represented by counsel. The alleged violations of ministerial securities laws have absolutely no correlative or causal relationship with the damages being sought by Mr. Johnson.

exceptions to discharge found in section 523(a), applies only to individual, not corporate, debtors."); *S. Ill. Railcar Co. v. Nashville & E. Ry. Corp.*, 2006 U.S. Dist. LEXIS 58281, at *15-16 (S.D. Ill. Aug. 18, 2006) ("Federal Courts have recognized this distinction and confirmed that the § 523 exemptions from discharge apply only to individual debtors.") (citing *Yamaha*, 762 F.2d at 670; *Grothues*, 226 F.3d at 337); *Giacobbe v. Voyager Dig. Holdings, Inc. (In re Voyager Dig. Holdings, Inc.)*, 2022 Bankr. LEXIS 3364, at *2 (Bankr. S.D.N.Y. Nov. 30, 2022) ("The introductory sentence to section 523(a) makes clear that the provision is limited to 'individual' debtors.").

Upon diligent inquiry, there does not appear to be any precedent from within the Eighth Circuit, from any court, at any time since *Yamaha*, wherein a legal entity is subjected to the nondischargeability rigors of Section 523. To the contrary, *Yamaha* has been settled law for nearly four decades.

In short, Section 523(a) is simply not applicable to legal entities like CAPEX. And it seems peculiar that, faced with a case in which the Debtor is proposing a 100% plan that furnishes a backup liquidation mechanism, Mr. Johnson would nonetheless harp on a nondischargeability provision of the Bankruptcy Code in the first instance. After all, even if Section 523(a) could otherwise be applicable, the provision would play no role in a case where the Debtor is either paying creditors in full or wholly liquidating its asset base. There is accordingly at least an inference of the Motion being somewhat pretextual in nature as Mr. Johnson seemingly seeks a basis to moot a pending adversary proceeding.

### c. Annulment is Inappropriate Where a Stay Violation is Knowing

Since Mr. Johnson has already violated the Automatic Stay, and since violations of the Automatic Stay are void and not merely voidable, seeking ordinary relief will not achieve the ends of which Mr. Johnson is desirous. So, instead, the Motion asks the Automatic Stay be retroactively

annulled. Yet, while annulment is no doubt proper in a narrow band of idiosyncratic circumstances, case law is express that such a form of relief is wholly improper where, as here, the underlying violation was knowingly undertaken.

As observed by a sister court, "in most cases, annulling the stay will not be appropriate if a party violates the stay with knowledge of the bankruptcy case." *In re Patel*, 642 B.R. 187, 199 (Bankr. N.D. Ga. 2022). This is so because, *inter alia*, "[c]ontinuing with collection activity with knowledge of the bankruptcy case generally reflects a disregard for the automatic stay, important rights of the debtor, and the authority of the Bankruptcy Court." *Id. See also Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 508 B.R. 646, 666 (Bankr. W.D. Va. 2014) ("Examples of when it is proper for courts retroactively to annul the automatic stay include when there is merely a technical violation of the automatic stay or when the creditor lacks knowledge of the automatic stay.") (citing *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 187 (E.D. Va. 2005); *In re Moore*, 350 B.R. 650, 655 (Bankr. W.D. Va. 2006)); *In re Anderson*, 341 B.R. 365, 368 (Bankr. D.D.C. 2006) ("Seldom if ever will a court annul the automatic stay when a creditor has actual knowledge of a bankruptcy case and undertakes an act that it knows violates the automatic stay despite such knowledge. . .").

Indeed, the Bankruptcy Appellate Panel of the Eighth Circuit has made clear that the circumstances in which the Automatic Stay may be annulled are limited to those in which there exist "technical or inadvertent violations which do not harm the estate. . ." *Seaver v. New Buffalo Auto Sales (In re Hecker)*, 496 B.R. 541, 549 (B.A.P. 8th Cir. 2013).

Mr. Johnson's violation of the Automatic Stay is neither technical nor inadvertent. Fully on notice of the pendency of this case, he continued to prosecute a state court suit against CAPEX, docketing a proposed order that purports to liquidate a claim against the Debtor and thereby strip

10

the Debtor of all defenses to liability. Indeed, it is not merely that Mr. Johnson passively failed to notify the state court of the bankruptcy of CAPEX and, as such, allowed a void summary judgment ruling to be made on the errant basis of the motion being unopposed. It is, rather, also that once that ruling was made, Mr. Johnson—through counsel—filed a proposed judgment so as to solidify the ruling and create a final judgment upon which Mr. Johnson could rely for all purposes (including filing a proof of claim in this bankruptcy case).

This is not the variety of behavior for which annulment of the Automatic Stay is appropriate; this is the variety of behavior for which a suit seeking damages stemming from a violation of the Automatic Stay is appropriate. Mr. Johnson's actions do, in the words of the *Patel Court,* "reflect[] a disregard for the automatic stay, important rights of the debtor, and the authority of the Bankruptcy Court." *In re Patel*, 642 B.R. at 199.

### IV.   Conclusion

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: December 23, 2024   By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtor*

*[Certificate of Service on Following Page]*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig
