IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## OBJECTION TO CLAIM OF JEFF JOHNSON

Comes now Jamieson CAPEX Fund, LLC ("CAPEX" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 3007, and objects to allowance of the claim of Jeff Johnson ("Mr. Johnson" or the "Claimant," with the underlying claim being found at entry #4 in the claims register and being known as the "Claim") and in support thereof states as follows:

### I. Introduction

On actual notice of this bankruptcy proceeding, Mr. Johnson continued to prosecute a state court lawsuit against CAPEX. Weeks after learning of the Debtor's bankruptcy petition, Mr. Johnson filed with the state court a proposed form of judgment in that lawsuit. When counsel for CAPEX flagged this as a violation of the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay"), and asked the proposed form of judgment be withdrawn, Mr. Johnson demurred. A judgment was thereafter entered (the "Judgment"), with Mr. Johnson now relying on that wrongfully-procured, and legally void, document as the sole basis for the Claim.

This course of events is as troubling as the resulting Judgment is improper. And CAPEX now objects to allowance of the Claim for two reasons: (i) the Judgment—the sole support for the

1

Claim—is a legal nullity; and (ii) relying on the Judgment, in this Honorable Court, is a manifest violation of the "chutzpah doctrine" adopted by other judicial circuits.

## II. Standard

As previously observed by this Honorable Court, "Section 502 of the Bankruptcy Code governs the allowance of claims and interests. A filed proof of claim is deemed allowed unless a party in interest objects." *In re Midwest Agri Dev. Corp.*, 2007 WL 4868309, at *1 (Bankr. D.N.D. 2007) (citing 11 U.S.C. § 502(a)). Further:

> . . . once a proof of claim is filed it is prima facie evidence of the claim's validity and amount, and the claim is deemed allowed if there is no objection. "If an objection to the claim is made, the court, after notice and a hearing, must determine the amount of the claim fixed as of the date of the petition." "Bankruptcy Rule 3001(f) places the burden of producing some evidence to rebut the presumption of validity on the objecting party." "If this burden of production is met, the ultimate burden of persuasion as to the allowability of the claim resides with the creditor."

*In re Racing Services, Inc.*, 595 B.R. 334, 353 (Bankr. D.N.D. 2018), aff'd, 617 B.R. 641 (D.N.D. 2020), aff'd, 854 Fed. Appx. 777 (8th Cir. 2021) (citing and quoting *In re Tanner*, 2013 WL 2318848, at *4 (Bankr. N.D. Iowa 2013) (citing *In re Be-Mac Transp., Co.*, 83 F.3d 1020, 1025 (8th Cir. 1996); *In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004))).

Once an objection to a proof of claim is lodged, "[a]s a rebuttal to the Debtors' objection in this case, the claimant must at least establish that a claim exists." *Matter of Interco Inc.*, 137 B.R. 1002, 1002 (Bankr. E.D. Mo. 1992).

## III. Argument: The Claim Should be Disallowed

### a. The Judgment is Void

For want of ambiguity, had Mr. Johnson filed a proof of claim herein, asserting some liability premised upon violation of applicable securities laws, or propagating other contractual or tort-centric theories of recovery, CAPEX would have assessed the resulting claim on its merits. Yes, an objection would likely nonetheless ensue, but it would be an objection pegged to the

merits, *vel non*, of the assertions of Mr. Johnson. That is not, however, what Mr. Johnson did in this case, where he instead opted to (i) ignore the Automatic Stay; (ii) obtain a judgment in violation of the Automatic Stay, despite repeated warnings from the Debtor; and then (iii) file the Claim, premised, *en toto*, on the violative state court order. Aside from the myriad equitable issues invited by this factual construct, such invites a rather simple reason for disallowance of the Claim: the Judgment is, as a matter of law, a nullity. And a claim premised upon a nullity is not a claim at all.

In the Eighth Circuit, actions taken in violation of the Automatic Stay are not merely voidable but, indeed, void ab initio. *See, e.g.*, *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999) ("We hold that an action taken in violation of the automatic stay is void ab initio."); *Seaver v. New Buffalo Auto Sales (In re Hecker)*, 496 B.R. 541, 549 (B.A.P. 8th Cir. 2013) (". . . actions taken in violation of the automatic stay are *void ab initio*, rather than merely being voidable at the request of an interested party.") (citing *LeBarge*, 240 B.R. 317).

While this issue no doubts overlaps with the declaratory relief CAPEX is currently seeking in a related adversary proceeding, *see Jamieson CAPEX Fund, LLC v. Johnson*, Case No. 24-07028 (Bankr D.N.D. 2024), the conclusion is somewhat legally unavoidable.[1] This bankruptcy case was filed on September 22, 2024. *See* Petition for Relief, DE #1. The order underlying the Judgment was entered on September 27, 2024, and the Judgment itself followed on October 25, 2024. *See* Claim, at Part 2. Quite plainly, the latter two occurrences both came post-petition. And

---

[1] Lest the filing of this objection appear an effort to short-circuit relief sought in the adversary proceeding, CAPEX would have no objection to the two matters being consolidated for administrative purposes and adjudicated in accord with whatever schedule may govern the adversary proceeding. CAPEX is not seeking two bites at a proverbial apple; the Debtor simply wishes to establish a record where it is clear that the Claim is subject to objection and disputed in nature.

the order for summary judgment, as well as the Judgment itself, are thusly void ab initio under *LeBarge* and *Seaver*.

### b. The Claim Violates the Chutzpah Doctrine

Even assuming, *arguendo*, the Judgment is not void and a resultant nullity, permitting the Claim to be honored in this case—when premised solely upon the post-petition Judgment—would run contra to the chutzpah doctrine. Though yet to be formally adopted in the Eighth Circuit, this standard has been increasingly embraced nationwide over the past several decades. The facts of the instant dispute are ideal for further expansion of the once-coastal doctrine into the heartland.

The doctrine originated in the District of Columbia Circuit which, in 1991, noted the definition of forbade "chutzpah" to be "a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan." *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n.5 (1991) (citing *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 83 (D.C. Cir. 1987)).

The doctrine has since been used to turn away the contentions of a fugitive bemoaning that that the IRS could not locate him for purposes of serving a notice. *Marks v. C.I.R.*, 947 F.2d 983, 986 (D.C. Cir. 1991). And the doctrine has, too, been invoked when the District of Columbia refused to pay an attorney's court-ordered fees in one case, and then used that non-payment to seek his disqualification as class counsel—on a theory that he lacked financial resources—in another case. *DL v. Dist. of Columbia*, 302 F.R.D. 1, 15 (D.D.C. 2013), aff'd, 860 F.3d 713 (D.C. Cir. 2017).

The United States Tax Court relied upon the doctrine, in the early 1990s, when a citizen protested that the IRS ought not have used the "present home address" listed on his tax return, for purposes of sending communications, since that was not actually his home address. *Farnham v.*

4

*Commissioner*, 1991 Tax Ct. Memo LEXIS 699, at *10 (T.C. Dec. 26, 1991). So, too, has the doctrine been invoked when a litigant suggested one shipping inspector ought not be permitted to inspect three separate carriers, since such makes it more difficult "to play one against the other." *Caribbean Shippers Ass'n v. Surface Transp. Bd.*, 145 F.3d 1362, 1364 (D.C. Cir. 1998).

Outside of the District of Columbia Circuit, the doctrine has expanded with the passage of time. In 1999, the Court of Federal Claims nominated for its "Chutzpah Championship" a litigant who cited evidence that "stands for exactly the opposite of the proposition." *Am. Renovation v. United States*, 45 Fed. Cl. 44, 50 (1999). A state court in Illinois followed a year later, citing the doctrine when an individual repossessed a consumer vehicle, got into an accident, and then sued the owners' vehicle insurer for uninsured motorist coverage on the tenuous theory that repossessions are carried out with consent (and the driver was thusly operating the vehicle as an invitee of the now-repossessed owners) under governing loan documents. *Zimmerman v. State Farm Mut. Auto. Ins. Co.*, 729 N.E.2d 70, 72-73 (Ill. App. 3d 2000).

Though the Ninth Circuit declined to expressly the adopt chutzpah doctrine in 2001, that court did acknowledge the existence of binding "chutzpah jurisprudence" when denying a criminal defendant's request to have bail refunded after "jump[ing] bail, flee[ing] the country, and obtain[ing] a favorable plea bargain based on his promise of immediate payment." *United States v. Sar-Avi*, 255 F.3d 1163, 1169 (9th Cir. 2001). Five years later, the Southern District of New York embraced the doctrine when confronting a case where "an individual, after being mauled by the 450-pound Siberian tiger he had been raising inside his fifth-floor apartment along with an alligator, sue[d] the city and the police who entered the apartment in an effort to rescue the animals for doing so without a search warrant." *Yates v. City of N.Y.*, 2006 U.S. Dist. LEXIS 54199, at *2 (S.D.N.Y. Aug. 4, 2006).

5

In 2020, the Fifth Circuit adopted the doctrine when faced with litigants who obtained an injunction to permit their intervention in election litigation, only to—mere days later—urge a court that judicial intervention is inappropriate based on the complexity of the legal issues in the case. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020). And just last year, the Central District of California did, too, cite the doctrine in a vehicle impound case where:

> Defendants misled class members into believing that they were not entitled to the release of their vehicles before the 30 days were over, even though they would have been. Now, Defendants seek to profit from their own wrongdoing—providing notice with a misleading and incorrect legal position—by claiming that those who did not request storage hearings cannot recover damages when the City violated their Fourth Amendment rights.

*Brewster v. City of L.A.*, 672 F. Supp. 3d 872, 971 (C.D. Cal. 2023)

Admittedly, no acts of murder have resulted in any litigants being orphaned *sub judice*. And this case assuredly does not involve international fugitives, misleading tow notices, or even a 450-pound Siberian tiger. But Mr. Johnson knowingly violated the Automatic Stay, was warned that he was knowingly violating the Automatic Stay, persisted in knowingly violating the Automatic Stay, and now asks this Honorable Court to accept a proof of claim premised, *en toto*, upon those knowing violations of the Automatic Stay. Assuredly, this runs afoul of the chutzpah doctrine.

### IV. Conclusion

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) sustain this objection; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully Submitted, |
| Dated: December 26, 2024 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |
|  |  | *Counsel for the Debtor* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of December, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig