IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC | ) | |
| | ) | |
| Reorganized Debtor. | ) | |
| _____ | ) | |

**FIRST AND FINAL APPLICATION OF THE
DAKOTA BANKRUPTCY FIRM FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
IN CONNECTION WITH REPRESENTATION OF JAMIESON CAPEX FUND, LLC**

Come now Maurice B. VerStandig and The Dakota Bankruptcy Firm (collectively, "DBF"), counsel for the above-captioned now-reorganized debtor (the "Debtor" or "CAPEX"), pursuant to Section 330 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2016, and apply to this Honorable Court for final[1] allowance of compensation of (i) $16,867.00 in attorneys' fees, and (ii) reimbursement of $952.92 in expenses, and in support thereof state as follows:

**I.      Introduction**

Between this case being filed on September 22, 2024, and a confirmation order being entered on January 15, 2025, precisely one hearing was actually held: a statutorily-mandated status conference that was conducted via telephone and that lasted all of 32 minutes. Not a single exhibit was ever moved into evidence, no legal arguments were ever made in open court, and none of the attorneys in this case ever so much as turned on their cameras for a Zoom hearing. Yet the largely

---

[1] While work is still ongoing in adversary proceedings related to this case, and while additional filings are reasonably anticipated in the main case, the plan of reorganization excuses counsel from filing applications for compensation for post-confirmation efforts. *See* Jamieson CAPEX Fund, LLC's First Amended Subchapter V Plan of Reorganization, DE #88, at § 8.12.

1

hearing-less track of this case ought not be mistaken for indicia of a reorganization that proceeded quietly, wholly amicably, or with little work.

Indeed, during the less than four months that CAPEX was a debtor yearning to reorganize, the entity scrambled to locate conflicts counsel so as to mollify concerns about whether or not general reorganization counsel carried a potential conflict, the Debtor excused its own principal in favor of a chief restructuring officer ("CRO") so as to moot concerns about a separate series of potential conflicts, two adversary proceedings were filed, one of those adversary proceedings was tentatively settled (subject to a forthcoming motion under Rule 9019), a stay relief motion was defended and resolved (subject to the same forthcoming 9019 motion), a claim objection was docketed (to also be resolved through the same forthcoming 9019 motion), the Debtor's second-largest creditor voted against acceptance of the plan of reorganization (spurning a slightly-frenzied race to lock up votes from other creditors without running afoul of solicitation rules), a meeting of creditors spanned two sessions, and research on a third adversary proceeding (likely to be soon filed) was undertaken.

Lest the foregoing summary of events seem sufficiently exhaustive, the recitation does not include any of the more mundane elements of a chapter 11 case that were, too, undertaken: an initial debtor interview was attended, a statement of financial affairs was docketed post-petition, a status report was drafted and filed, operating reports were timely furnished, a plan of reorganization was presented and balloted, slight edits to the plan were negotiated, ballots were tallied, and a declaration in support of confirmation was assembled and filed.

All of which is to posit that this has been neither the most simple nor most complex of cases, but the chapter 11 travails of CAPEX have certainly been interesting. No substantive hearings may have been held, though plenty of interesting issues were researched and briefed, a

2

healthy quotient of evidence was collated for evidentiary hearings that ultimately did not come to pass, and significant efforts were required on the part of Counsel from the petition date through the confirmation date. Compensation for those efforts is now sought, with it being respectfully urged that the fees and expenses at issue are reasonable in nature and were uniformly incurred in good faith furtherance of the Debtor's reorganization.

## II.     Recitations Pursuant to Applicable Law

1. The services for which compensation is herein sought were performed between September 22, 2024 and January 17, 2025. Maurice VerStandig and Christianna Cathcart performed all billable work.

2. No interim applications for compensation were filed by DBF in this case.

3. Complete time records for attorney work are appended hereto as Exhibit A. Included therein are certain time entries that were marked as "non-billable" upon review of records in anticipation of filing this application. Other non-billable entries were removed from the invoice entirely before it was generated.

4. Records of expenses incurred are included in the time records appended hereto as Exhibit A, except for two third party mailing invoices, which are respectively appended hereto as Exhibits B and C.

5. The compensation sought hereunder, if approved, will be paid (i) first from a retainer in the sum of $9,712.00 being held in trust, and (ii) second, through payments in accord with the Debtor's confirmed plan of reorganization.

6. There is no agreement for DBF to share compensation with any third party.

## III.    Categorization of Time Entries

In accord with guidelines promulgated by the United States Trustee, DBF recorded all time in these matter in project categories. The time recorded—and compensation requested—for each

3

such project category is as follows, with the sums being inclusive of expense reimbursements sought in connection with each such project category:[2]

      a. Case Administration – 41.2 Hours – $8,459.40

      b. Plan and Disclosure Statement – 5.4 Hours – $2,355.56

      c. Claims Administration – 3.5 Hours - $1,000.00

      d. Fee and Employment Applications – 6.4 Hours - $2,560.00

      e. Adversary Suit Against Jeff Johnson – 4.1 Hours - $1,999.92

      f. Adversary Suit Against North Dakota – 3.2 Hours - $1,459.96

### IV. Hourly Rate

Time has been billed in this case at the rate of $400.00 per hour for partner time and $200.00 per hour for associate time.[3] This is the rate DBF often—albeit not always—charges to chapter 11 debtors in North Dakota, being premised upon (i) the rate normally charged by DBF's principal to debtors in other districts (typically between $450.00 and $600.00 per hour); (ii) the prevailing rates charged by other attorneys in this district (which, rather properly, tend to be lower than those assessed in other districts where DBF's principal frequently practices); (iii) the experience of DBF's principal; and (iv) a generalized economic observation of the rates that the North Dakota market seems most inclined to support.

---

[2] The total for each adversary proceeding is $4.96 more than what is reflected on Exhibit A insofar as each adversary proceeding correlates to one of the two mailing invoices appended as either Exhibit B or Exhibit C. That both mailing invoices are for precisely $4.96 is a coincidence; both were served on two addresses, with one service packet being a six page complaint and two page summons, and the other being a seven page complaint and one page summons.

[3] The pre-petition engagement agreement in this case provides for all attorney time to be billed at the rate of $400.00 per hour, but was drafted without cognizance that an associate attorney would perform work on this matter. The associate attorney's time has always been billed at $200.00 in this case (except where discounted) in accord with prevailing legal market norms.

4

## V. Discounts

Though no across-the-board discount has been applied to the fees sought by DBF, numerous time entries have been partially—or fully—discounted, as reflected on the records appended hereto as Exhibit A. Where appropriate in Counsel's discretion, these discounts reflect not any error in the recording of time but, rather, a recognition that time is sometimes utilized in a less-than-optimally-efficient manner. A cognizant effort has been made to ensure that DBF's two billing attorneys never both charged for the same meeting or event (with one entry being discounted by 100% in such instances).

## VI. Travel Time and Expenses

DBF does not seek compensation for time spent traveling to and from North Dakota, nor reimbursement for the expenses incurred in connection with such travel. As such, while there was a singular in-person client meeting occasioned by this case, and travel was undertaken in anticipation of a contested motion before such was withdrawn, the time records appended hereto are notably devoid of any time entries for travel and any expense entries for airfare/lodging/rental cars.

To the extent compensable work was undertaken while traveling (i.e., preparing for a hearing while on an airplane), however, such is included in the services for which compensation is sought.

## VII. Description of Services Rendered

The time records appended hereto as Exhibit A contain a thorough description of all services rendered for which compensation is instantly sought. And many of those services are also well reflected on the docket of these cases, in the form of briefs and other papers. By way of a generalized description, however, DBF notes that services included the following:

5

     a.     Advising the Debtor in connection with case-centric matters;

     b.     Endeavoring to negotiate a consensual plan of reorganization;

     c.     Advising the Debtor in connection with the location and engagement of conflicts counsel and a CRO;

     d.     Representing the Debtor in an adversary proceeding aimed at obtaining funds from the State of North Dakota;

     e.     Representing the Debtor in an adversary proceeding—and related stay relief and claim objection proceedings—correlative to disputes with a certain putative creditor; and

     f.     Managing case-centric obligations through the duration of CAPEX's tenure as a pre-confirmation debtor-in-possession.

## VIII. Conclusion

WHEREFORE, Maurice Belmont VerStandig and The Dakota Bankruptcy Firm respectfully pray this Honorable Court (i) finally approve and ratify fees in the sum of $16,867.00; (ii) finally approve and ratify expenses in the sum of $962.84; (iii) permit DBF to draw $9,712.00, from the funds being held as a retainer, in trust, toward payment of the foregoing fees and expenses; (iv) award The Dakota Bankruptcy Firm an administrative claim of $8,657.84, to be paid by the Debtor in accord with the confirmed plan of reorganization; and (v) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

                                      Respectfully submitted,

Dated: January 20, 2025        By:    /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig, Esq.
                                                The Dakota Bankruptcy Firm
                                                1630 1st Avenue N
                                                Suite B PMB 24
                                                Fargo, North Dakota 58102-4246
                                                Phone: (701) 394-3215
                                                mac@dakotabankruptcy.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 20th day of January, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

      I FURTHER CERTIFY that, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6), a copy of the notice attached hereto as Exhibit D (but not of this application or the other exhibits) is being sent, on the 21st day of January, 2025, via First Class Mail, postage prepaid, to all parties on the mailing matrix attached hereto as Exhibit E, *except* no copy will be mailed to (i) this Honorable Court; or (ii) The Dakota Bankruptcy Firm.

                                                               /s/ Maurice B. VerStandig
                                                               Maurice B. VerStandig