IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC | ) | |
| | ) | |
| Reorganized Debtor. | ) | |
| _____ | ) | |

**FIRST AND FINAL APPLICATION OF
JAMIESON CAPEX FUND, LLC FOR ALLOWANCE OF
<u>COMPENSATION OF CHIEF RESTRUCTURING OFFICER</u>**

Comes now Jamieson CAPEX Fund, LLC ("CAPEX"), pursuant to Section 330 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2016, and applies to this Honorable Court for final allowance of compensation of $1,015.88, to be paid to Michael Schmitz ("Mr. Schmitz"), for services rendered as chief restructuring officer ("CRO") of CAPEX prior to the date of plan confirmation, and in support thereof state as follows:

**I.      Introduction**

When various questions were raised about the interests of CAPEX's chief executive, the entity elected to employ a chief restructuring officer whose judgment and credibility would be beyond reproach. In Mr. Schmitz, the then-debtor found one such person—a well-regarded accountant, with deep community ties and an impeccable reputation. And so, for just over a month pre-confirmation, Mr. Schmitz took helm of CAPEX, guiding the entity through the final throes of the chapter 11 reorganization process. Mr. Schmitz continues to serve in the same capacity to this day, and will be compensated for his post-confirmation efforts without the formalities of judicial approval. But, for his pre-confirmation services, leave of court is required to pay the palpably meager fees he incurred. And so CAPEX now seeks approval of those fees, in the sum of $1,015.88.

**II.     Recitations Pursuant to Applicable Law**

1.    The services for which compensation is herein sought were performed between December 6, 2024 and January 15, 2025. Mr. Schmitz performed all billable work.

2.    No interim applications for compensation were filed by Mr. Schmitz in this case.

3.    Complete time records for CRO work are appended hereto as Exhibit A.

4.    No expense reimbursements are being instantly sought.

5.    The compensation sought hereunder, if approved, will be paid in accord with the Debtor's confirmed plan of reorganization.

6.    There is no agreement for Mr. Schmitz to share compensation with any third party, though compensation may be paid through his professional firm.

**III.    Hourly Rate**

Mr. Schmitz billed his time in this case at the rate of $405.00 per hour. It is respectfully submitted this rate is reasonable for a professional, such as Mr. Schmitz, and in line with the prevailing rates charged by other professionals in the North Dakota legal, accounting, and fiduciary communities.

It also bears notation that Mr. Schmitz was exceedingly judicious with his time. The total fees sought—$1,015.88—are, candidly, notably less than undersigned counsel anticipated would need to be expended in connection with the retention and utilization of a CRO's services. While the time records make clear Mr. Schmitz did meaningfully set out about undertaking his job with diligence, they also show that he avoided any temptation to bill time with a proverbial hand any heavier than absolutely necessary.

### IV.  Description of Services Rendered

The time records appended hereto as Exhibit A contain a thorough description of all services rendered for which compensation is instantly sought. That most such services chiefly involved corresponding or speaking with undersigned counsel is neither surprising nor coincidental; as CRO, Mr. Schmitz stepped into the role of being the debtor representative in this case. And with CAPEX having the peculiar distinction of being an operating entity without any employees and without any physical footprint, those operations chiefly consisted of managing the bankruptcy process and working to usher the company through plan confirmation.

To be sure, Mr. Schmitz was thoughtful in carrying out his work. The attorney/client privilege insulates from disclosure many of the communications exchanged during the final month and change of this case, but suffice it to post that Mr. Schmitz was regularly asked to weigh in on questions of case strategy, was regularly presented with fairly lengthy e-mails discussing the respective pros and cons of certain actions (or inactions), and was tasked with processing all of this in an expedient and meaningful fashion—which he did, unfailingly.

### V.  Conclusion

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) finally approve and ratify fees in the sum of $1,015.88, to be paid to Michael Schmitz for his pre-confirmation services as CAPEX's chief restructuring officer; (ii) direct such fees be paid by CAPEX in accord with the confirmed plan of reorganization; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
| Dated: April 1, 2025 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of April, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

I FURTHER CERTIFY that, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6), a copy of the notice attached hereto as Exhibit B (but not of this application or the other exhibits) is being sent, on the 2nd day of April, 2025, via First Class Mail, postage prepaid, to all parties on the mailing matrix attached hereto as Exhibit C, *except* no copy will be mailed to (i) this Honorable Court; or (ii) The Dakota Bankruptcy Firm.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

4