IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30422 |
| | ) | (Chapter 11) |
| JAMIESON CAPEX FUND, LLC | ) | |
| | ) | |
| Reorganized Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JAMIESON CAPEX FUND, LLC | ) | Adv. Case No. 26-07001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREDERICK WILLIAM BROWER | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# COMPLAINT

Comes now Jamieson CAPEX Fund, LLC ("CAPEX" or the "Reorganized Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for its complaint (the "Complaint") against Frederick William Brower ("Mr. Brower" or the "Defendant") states as follows:

### Introduction

1. This is an unfortunate case in which the Reorganized Debtor is fiduciarily-bound to seek to recover monies from Mr. Brower, a creditor who loaned monies to CAPEX pre-petition and received much of those monies, from CAPEX's monies held by the State of North Dakota, post-petition.

2. The logistics of how Mr. Brower came to be in possession of monies rightfully belonging to CAPEX are *sui generis* and unusual, with much—albeit not all—of the correlative

1

blame falling at the feet of an overzealous former commissioner of a since-absorbed state securities department.

3. At bottom, North Dakota (i) seized funds destined for CAPEX, pre-petition; (ii) distributed approximately $408,610.87 of those monies to Mr. Brower, post-petition; and then (iii) remitted the majority of the remaining seized funds, to the Reorganized Debtor, pursuant to a settlement agreement.

4. Mr. Brower appears to have taken these monies from the state upon showing that he loaned monies to—or was an investor in—CAPEX and, accordingly, held a *bona fide* claim against CAPEX. The Reorganized Debtor does not dispute these realities but, equally, is cognizant that Title 11 of the United States Code (the "Bankruptcy Code") provides an efficient mechanism through which monies are to be distributed to the creditors of entities seeking to reorganize; by taking monies of CAPEX, held by the State of North Dakota, post-petition, Mr. Brower usurped this efficient system and enriched himself at the expense of other creditors *sub judice*.

5. In essence, while CAPEX's bankruptcy case was proceeding, North Dakota held an unlawful concurrent mini-liquidation of CAPEX's seized assets, rewarding Mr. Brower handsomely for filing a claim before the state turned over the majority of remaining funds to the Reorganized Debtor; it is not clear that Mr. Brower's participation in this simultaneous process was malicious or even steeped in bad faith, but it is clear that he is not legally entitled to retain the fruits thereof.

6. The Reorganized Debtor thusly now brings this suit to recover monies that should be made available for distribution to *all* creditors, pursuant to CAPEX's confirmed plan of reorganization.

### Parties

7. CAPEX is a North Dakota limited liability company and a former debtor-in-possession, having petitioned for relief under Section 301 of Title 11 of the United States Code on September 22, 2024 before confirming a plan of reorganization (the "Plan") on January 15, 2025.

8. CAPEX operates, post-conformation, in accord with the rigors of the Plan, under the direction of the Reorganized Debtor's chief reorganization officer, Michael Schmitz.

9. Mr. Brower is a natural person who, upon information and belief, is a citizen of the State of Minnesota by virtue of his ongoing domicile in or about Waubun, Minnesota.

### Jurisdiction and Venue

10. This Honorable Court enjoys jurisdiction over the instant proceeding, pursuant to the allowances of Section 157(b)(2)(A, C, E, H, O) of Title 28 of the United States Code, as this case concerns the administration of the Reorganized Debtor's estate (the "Estate"); is a counterclaim against an individual who filed a claim against the Estate; seeks a turnover of property belonging to the Estate; seeks to determine, avoid, and recover a fraudulent conveyance; and is the liquidation of a litigation asset of the Estate.

11. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as this matter both arises under Title 11 of the United States Code and relates to a proceeding under Title 11 of the United States Code.

### General Allegations

12. As part of various pre-petition securities investigations and regulatory actions, the State of North Dakota intercepted—from monies otherwise due and destined for CAPEX—the sum of $150,000.00 on or about August 28, 2022, and the sum of $471,259.33 on or about October 15, 2022.

13. CAPEX subsequently petitioned for chapter 11 relief, on September 22, 2024, transparently aiming to use its reorganization as a platform through which the intercepted monies might be turned over and made available for (i) the funding of CAPEX's ongoing operations; and (ii) payment to creditors of CAPEX.

14. Mr. Brower was made aware of CAPEX's bankruptcy case shortly after the filing thereof, being listed on the mailing matrix appended to the petition for relief and being scheduled as a creditor of CAPEX.

15. On or about November 6, 2024, Mr. Brower filed a proof of claim in CAPEX's bankruptcy case, indicating a debt of $768,713.49 to be owed him by CAPEX.

16. The sum indicated on Mr. Brower's proof of claim mirrors, precisely, that indicated by CAPEX on the schedules filed with this Honorable Court.

17. Mr. Brower later further participated in CAPEX's bankruptcy case, on or about January 8, 2025, by casting a vote in favor of confirmation of the Plan.

18. The Reorganized Debtor did not dispute—and never has disputed—that monies were owed to Mr. Brower, pre-petition, on account of one or more loans made by Mr. Brower to either (i) CAPEX; or (ii) Secure Income Fund, a pass-through subsidiary wholly owned and operated by CAPEX.

19. Problematically, however, it appears that by the time Mr. Brower cast his ballot in this case, he had received the lion's share (albeit not whole) of the monies he was owed, from the State of North Dakota, through remittance of a portion of the funds previously intercepted en route to the Debtor.

20. Specifically, while the precise date(s) of the transfers are not known, it is believed Mr. Brower received approximately $408,610.87 of monies, belonging to CAPEX's estate, from

4

North Dakota, on some date(s) between September 22, 2024 and November 18, 2024, after CAPEX had filed a petition for chapter 11 relief.

21. The Reorganized Debtor did not authorize the State of North Dakota to disburse these monies to Mr. Brower, this Honorable Court did not authorize the State of North Dakota to disburse these monies to Mr. Brower, and the funds were—at all times relevant—the lawful property of CAPEX's bankruptcy estate.

22. In recognition of Mr. Brower having already been paid the majority of the monies he is due (through the transfer at issue herein), and understanding this Complaint was likely to follow, the Reorganized Debtor has withheld post-confirmation disbursements from Mr. Brower, under the Plan, instead setting aside such monies so that their application may be determined upon resolution of this action.

**Count I – Avoidance Under 11 U.S.C. § 549**

23. CAPEX repeats and realleges each and every foregoing paragraph of this Complaint, as though fully set forth herein.

24. The $408,610.87 paid to Mr. Brower, by the State of North Dakota, constituted property of CAPEX's Estate being held by North Dakota as a custodian.

25. Mr. Brower received the payment of $408,610.87 after the commencement of CAPEX's bankruptcy case.

26. The payment of $408,610.87, to Mr. Brower, was not authorized under Section 303(f) of the Bankruptcy Code, insofar as this is not—and never has been—an involuntary bankruptcy case.

27. The payment of $408,610.87, to Mr. Brower, was not authorized under Section 542(c) of the Bankruptcy Code, insofar as (i) Mr. Brower was on actual knowledge of CAPEX's

5

bankruptcy case at the time he received the subject monies; and (ii) Mr. Brower was the transferee—not transferor—of the subject monies.

28. The payment of $408,610.87, to Mr. Brower, was not authorized by any provision of the Bankruptcy Code or any order of this Honorable Court.

29. The payment of $408,610.87, to Mr. Brower, does not constitute a transfer of real estate or any interest therein.

30. CAPEX's bankruptcy case has not been closed.

31. Less than two years have elapsed since Mr. Brower received the payment of $408,610.87.

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) enter judgment in favor of CAPEX, and against Mr. Brower, in the sum of $408,610.87; and (ii) afford such other and further relief as may be just and proper.

**Count II – Avoidance Under 11 U.S.C. § 544(a); N.D. Cent. Code § 13-02.1-04(1)(b)**

32. CAPEX repeats and realleges each and every foregoing paragraph of this Complaint, as though fully set forth herein.

33. CAPEX did not receive anything—much less reasonably equivalent value—in exchange for Mr. Brower's receipt of $408,610.87.

34. At the time of Mr. Brower's receipt of $408,610.87, CAPEX lacked the capacity to pay its own debts as they came due.

35. Specifically, at the time CAPEX entered chapter 11, CAPEX held liquid assets insufficient to pay the debt obligations of CAPEX as those obligations matured.

6

36. At the time of Mr. Brower's receipt of $408,610.87, CAPEX was engaged in a business (namely the management of investments through, *inter alia*, the arbitraging of loaned monies) for which the assets of CAPEX were unreasonably small.

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) enter judgment in favor of CAPEX, and against Mr. Brower, in the sum of $408,610.87; and (ii) afford such other and further relief as may be just and proper.

**Count III – Avoidance Under 11 U.S.C. § 544(b); N.D. Cent. Code § 13-02.1-05**

37. CAPEX repeats and realleges each and every foregoing paragraph of this Complaint, as though fully set forth herein.

38. CAPEX did not receive anything—much less reasonably equivalent value—in exchange for Mr. Brower's receipt of $408,610.87.

39. CAPEX was insolvent at the time Mr. Brower received the sum of $408,610.87, with CAPEX lacking the ability to pay its debts as they came due.

40. Specifically, CAPEX defaulted on multiple real estate loans, pre-petition, because CAPEX lacked the monies sufficient to make monthly installment payments on promissory notes.

41. At the time of the transfer of $408,610.87 to Mr. Brower, CAPEX was indebted to, *inter alia*, (i) Jamieson Natural Resources Fund, LLC; (ii) Jeff Johnson; (iii) Amber Carlson; (iv) Brad Sunderland; and (v) Jamieson Legacy Fund.

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) enter judgment in favor of CAPEX, and against Mr. Brower, in the sum of $408,610.87; and (ii) afford such other and further relief as may be just and proper.

**Count IV – Turnover Under 11 U.S.C. § 542**

42.     CAPEX repeats and realleges each and every foregoing paragraph of this Complaint, as though fully set forth herein.

43.     The $408,610.87 transferred to Mr. Brower was—and remains—an asset of the Estate, having belonged to CAPEX on the date a petition for bankruptcy relief was filed and having not been distributed to Mr. Brower in accord with any provision of the Bankruptcy Code.

44.     Mr. Brower was on actual notice of CAPEX's bankruptcy case at the time he received the $408,610.87.

45.     Mr. Brower is not an insurance company and is not known to operate an insurance company.

46.     The sum of $408,610.87 is of consequential value to the Estate and, upon turnover, will be of significant benefit to the Estate.

WHEREFORE, CAPEX respectfully prays this Honorable Court (i) enter judgment in favor of CAPEX, and against Mr. Brower, in the sum of $408,610.87; and (ii) afford such other and further relief as may be just and proper.

                                        Respectfully submitted,

Dated: January 3, 2026          By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        The Dakota Bankruptcy Firm
                                        1630 1st Avenue N
                                        Suite B PMB 24
                                        Fargo, North Dakota 58102-4246
                                        Phone: (701) 394-3215
                                        mac@dakotabankruptcy.com
                                        *Counsel for the Reorganized Debtor*