IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re:<br><br>JAMIESON CAPEX FUND, LLC<br><br>Reorganized Debtor. | ) | Case No. 24-30422<br>(Chapter 11) |
| JAMIESON CAPEX FUND, LLC<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK WILLIAM BROWER<br><br>Defendant. | ) | Adv. Case No. 26-07001 |

**AMENDED MOTION TO APPROVE**
**COMPROMISE WITH FREDERICK WILLIAM BROWER**[1]

Comes now Jamieson CAPEX Fund, LLC ("CAPEX" or the "Reorganized Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019, and moves to approve a compromise with Frederick William Brower ("Mr. Brower") that will resolve the matter of *Jamieson CAPEX Fund, LLC v. Brower*, Case No. 26-07001 (Bankr. D.N.D. 2026) (the "Adversary Proceeding"), and in support thereof states as follows:

## I. Introduction

Mr. Brower received $408,000.00 from a state agency that no longer exists, under the direction of an individual no longer in public service, in contravention of a statutory cap that was

[1] This motion is amended solely to (i) allow for service on all creditors, using a current list, with the Bankruptcy Noticing Center having come back online; (ii) update the notice attached hereto, accordingly; and (iii) adjust the date. The amended iteration of this draft has *not* been presented to opposing counsel, whose signature remains herein for the sole purpose of indicating agreement to certain terms herein set forth.

not obeyed. By all accounts, he did so without any cognizance that the funds he was receiving were monies that could be clawed back. After all, few would seem the citizens who receive monies from the executive branch of a state government with some abiding cognizance that the judicial branch of the federal government may thereafter insist on reallocating those funds. And yet, due almost entirely to the slapdash inanity of the state's actions, Mr. Brower has found himself defending an avoidance action, with CAPEX maintaining the monies he received to—in actuality—have been assets of its bankruptcy estate.

Rather than contest a series of murky issues of first (and, in all likelihood, last) impression, the parties have now resolved to settle this dispute. The settlement is relatively straightforward: Mr. Brower will have a reduced claim in this case and, in exchange, CAPEX will not seek to unwind the conveyance of monies from the state to Mr. Brower. It is a reasonable settlement, pegged relatively evenly between the respective outposts of probability, and calculated with an abiding recognition that the accrual of attorneys' fees is ultimately a detriment to all parties. And, while not the most fanciful of compromises to wend before this Honorable Court, it is a resolution reached after months on end of arm's length negotiations between counsel and advisors.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged this Honorable Court approve the proposed compromise, the terms of which are fully set forth herein.

## II. Terms of Agreement

The terms of settlement being proposed are relatively simplistic and straight-forward in nature. In light of this simplicity, and in the interests of avoiding the expenses associated with the formalities of a separate settlement agreement, CAPEX and the Mr. Brower agree—subject to the approval of this Honorable Court—that the following shall fully embody their resolution (the "Settlement Agreement"):

1. The claim of Mr. Brower in the bankruptcy of CAPEX shall be reduced from $768,713.49 to $400,000.00.

2. Mr. Brower irrevocably waives any right to assert a claim for a greater sum from CAPEX or any third party whose liability would be derivative of a relationship with CAPEX, even though there is notable evidence Mr. Brower's claim—prior to receipt of the at-issue funds—may have actually been as high as $883,000.00.

3. CAPEX has excluded Mr. Brower from each distribution to creditors to date but, nonetheless, has held back (and segregated on a ledger) funds equal to what his share thereof. Within 30 days of approval of the Settlement Agreement, CAPEX shall recalculate the sums due to all creditors, under disbursements made to date, and shall (i) send Mr. Brower his adjusted share of each such disbursement; and (ii) shall credit to each other creditor (but not necessarily immediately disburse to each other creditor) the pro rata increase in their respective share of each such disbursement.

4. CAPEX and Mr. Brower shall execute a joint stipulation of dismissal, in the Adversary Proceeding, noting such dismissal to be with prejudice.

5. The parties shall bear their own respective fees and costs in connection with the Adversary Proceeding.

6. This Honorable Court shall retain jurisdiction to adjudicate any disputes arising out of—or related to—this Settlement Agreement.

7. This Settlement Agreement shall be construed in accord with the laws of the United States of America and, where federal law does not prevail, the laws of the State of North Dakota, without regard to any conflict of laws principles.

8. Time shall be of the essence in performing under this Settlement Agreement.

## III. Standard

Familiarly, ". . . the court may approve a compromise or settlement" upon appropriate notice to parties in interest. Fed. R. Bankr. P. 9019(a).

In this judicial circuit, ". . . the standard for evaluation of a settlement 'is whether the settlement is fair and equitable and in the best interests of the estate.'" *Wigley v. Wigley (In re Wigley)*, 557 B.R. 678, 685 (B.A.P. 8th Cir. 2016) (quoting *Tri-State Financial, LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citing *Martin v. Cox (In re Martin)*, 212 B.R. 316, 319 (8th Cir. BAP 1997))).

In assessing fairness, equitability, and the best interests of an estate, a bankruptcy court is charged with examination of four factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wigley*, 557 B.R. at 685 (quoting *Drexel Burnham Lambert Corp. v. Flight Transp. Corp. (In re Flight Transp. Sec. Litigation)*, 730 F.2d 1128, 1135 (8th Cir.1984) (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929))).

## IV. Argument: The Compromise Should be Approved

At bottom, CAPEX believes it would prevail in this lawsuit and Mr. Brower, quite similarly, believes he would prevail in this lawsuit. But, fun as it may be to litigate, such seems precisely the sort of uncertainty-laced dispute ripe for an amicable resolution. The Settlement Agreement, as detailed above, is one such resolution—and an eminently reasonable one at that.

In terms of the probability of success in litigation, the ultimate question in this case likely would have turned on whether or not monies seized by North Dakota, from (or for the benefit of) CAPEX, and held in *de facto* escrow by the state, are an asset of CAPEX's bankruptcy estate. On

one hand, CAPEX would have pointed to an expansive reading of section 541 of the Bankruptcy Code, alongside state-level public policy interests that suggest commandeered monies ought not be regarded as forfeited monies absent a far greater degree of due process than that afforded CAPEX. On the other hand, Mr. Brower would have pointed to the fact that the monies were held by North Dakota, controlled by North Dakota, and administered by North Dakota—all of which lends a very strong inference that they belonged to North Dakota.

Plainly, this matters because if the monies were not an asset of CAPEX, then their loss would not seem avoidable under chapter 5 of the Bankruptcy Code. Yet if the funds were a recoverable asset of CAPEX (by way of turnover complaint or otherwise), then their payment to Mr. Brower would seem the prototypical avoidable conveyance.

To be sure, myriad other eccentricities surround any effort to gauge probability of success in this litigation. Yet the foregoing oddity is the one that has most potently driven settlement discussions and the ultimate decision to compromise the claims *sub judice*.

Vis a vis the second element of the test, there is a profound concern about the collectability of any judgment. CAPEX has an enduring respect for Mr. Brower and will assuredly not use the pages of this motion to publicly ponder his financial condition. Suffice it to posit, however, the monies originally entrusted to CAPEX, by Mr. Brower (the investment underlying this whole bollix), are believed to have constituted a great portion of his savings. And there is thusly a belief (if not an outright concern) that funds collected by him would seem more likely than not to have now found their way into one exempt form or another—especially with his residing in a state with a notably generous homestead exemption.

In terms of the complexity of the litigation, this case was both factually simple and legally complex. The scope of discovery would have been likely minimal, especially with the efficiencies

occasioned by a warm relationship between counsel. The legal issues, however, would have been grotesquely messy, for reasons intimated above. And insofar as those legal issues largely concern the administration of a state agency that has literally ceased to exist, it stands to reason there would have been scant regulatory or emerging precedential guidance to aid in the analysis and resolution of those issues.

Finally, this compromise conforms to the paramount interests of creditors, who are best served by seeing a large claim diminished and pro rata distributive shares inflated for all others. This is a settlement that will promptly allow additional monies to be paid to all creditors, while also giving all creditors a larger share of future distributions. Such is assuredly to the benefit of creditors and has been an overriding point of focus in resolving the issues in this case.

**V. Conclusion**

WHEREFORE, Jamieson CAPEX Fund, LLC respectfully prays this Honorable Court (i) approve the compromise set forth herein; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: October 27, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Reorganized Debtor*

Signed Solely to Signify Acquiescence to the Terms of the Settlement Agreement:

/s/ Tracy Kennedy (signed w/ permission)
Tracy Kennedy, Esq.
Dakota Law Group P.C.
3770 S Washington Street
Suite B
Grand Forks, North Dakota 58201
Phone: (701) 772-8111
tracy@dakotalawgroup.com
*Counsel for Mr. Brower*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

I FURTHER CERTIFY that, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), a copy of the notice attached hereto as Exhibit A (but not of this application or the other exhibits) is being sent, on the 27th day of October, 2026, via First Class Mail, postage prepaid, to all parties on the mailing matrix attached hereto as Exhibit B, *except* no copy will be mailed to (i) this Honorable Court; or (ii) attorneys employed by The Dakota Bankruptcy Firm.

/s/ Maurice B. VerStandig
Maurice B. VerStandig